# Illinois Official Reports

## Appellate Court

---

### *People v. Maya*, 2019 IL App (3d) 180275

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERICK M. MAYA, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-18-0275 |
| Filed | March 28, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 14-CF-274; the Hon. Daniel D. Rippy, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and Andrew J. Boyd, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, David J. Robinson, and Mark A. Austill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.<br>Justices McDade and O'Brien concurred in the judgment and opinion. |

**OPINION**

¶ 1      Following a preliminary *Krankel* inquiry, the Will County circuit court found no possible neglect of the defendant's case on the part of defense counsel and declined to appoint new counsel. On appeal, the defendant argues that the circuit court's finding was manifestly erroneous.

¶ 2                        I. BACKGROUND

¶ 3      The State charged the defendant, Erick M. Maya, with first degree murder (720 ILCS 5/9-1(a)(1) (West 2014)), attempted first degree murder (*id.* §§ 8-4(a), 9-1(a)(1)), and unlawful use of a weapon by a felon (*id.* § 24-1.1(a)).

¶ 4      During jury selection, venire member Kevin McGrath indicated that he worked as a correctional officer with the Will County Sheriff's Department. He also indicated that his son-in-law was an assistant state's attorney in Will County. McGrath denied that he would let prejudice or bias affect his ability to be fair and impartial. McGrath was called in for further questioning regarding his son-in-law. McGrath indicated that he would not speak to his son-in-law about the case, and it would not "be an issue" if he found the defendant not guilty. No questions were asked regarding McGrath's profession. The defendant's attorneys did not move to dismiss McGrath.

¶ 5      The parties agreed that they would each be allotted seven peremptory challenges. The defendant's attorneys used five of their seven challenges. McGrath was seated as the first alternate juror. When a juror became ill during the State's case-in-chief, McGrath was, by agreement of the parties, seated on the jury. At the conclusion of the defendant's trial, the jury found him guilty on all charged counts.

¶ 6      On October 8, 2014, the defendant filed a *pro se* motion for a new trial in which he alleged that George Lenard, one of his attorneys, had been ineffective.[1] Among his claims, the defendant alleged that he was deprived of a fair trial by an impartial jury in that:

> "(a) Defendant informed his attorney that a correctional officer from the facility housing him in [*sic*], and whom the defendant has had issues and conflicts with, was in the jury pool.
>
> (b) Defendant's attorney knowingly refused to use a peremptory strike to remove said juror.
>
> (c) Defendant's attorney stated that he would rather have the correctional officer on the jury than a venireman who was a State's Attorney."

¶ 7      At a hearing on October 14, 2014, defense counsel told the court that the defendant wished to withdraw his *pro se* motion. The defendant confirmed that he was voluntarily withdrawing his motion. Defense counsel subsequently filed a motion for a new trial on the defendant's behalf, which was denied. On October 20, 2014, the court sentenced the defendant to consecutive sentences of 72 years' imprisonment for first degree murder, 39 years' imprisonment for attempted first degree murder, and 11 years' imprisonment for unlawful use of a weapon by a felon. Prior to sentencing, a presentence investigation report (PSI) was filed.

---

[1]Though the defendant was represented by two defense attorneys throughout his trial, each of his posttrial claims of ineffectiveness have been levied against only Lenard.

The PSI stated that defendant reported that he had never been diagnosed with a mental health illness or disorder.

¶ 8 Defense counsel filed a motion to reconsider sentence. Soon thereafter, the defendant filed a *pro se* motion for sentence reduction. In the motion, the defendant again alleged that counsel had been ineffective for failing to move to strike a juror who worked as a correctional officer and with whom the defendant had engaged in "several confrontations." The defendant also alleged that defense counsel had been ineffective for failing "to conduct and [*sic*] investigation or subpoena [the defendant's] hospital records, which would have forced the State to order a psychological evaluation." At a hearing on those motions, the court did not allow the defendant to argue any of his ineffectiveness claims, only allowing him to address the single issue in his motion that related to sentencing. The court denied the motion.

¶ 9 The defendant filed another *pro se* motion for a new trial on January 29, 2015. In that motion, the defendant reiterated his previous claims of ineffective assistance of counsel. The court did not address the motion.

¶ 10 On direct appeal, this court rejected the defendant's argument that defense counsel had been ineffective for failing to request a jury instruction relating to other-crimes evidence. *People v. Maya*, 2017 IL App (3d) 150079, ¶ 96. However, we agreed with the defendant's argument—and the State's confession of error—that the circuit court had failed to properly address his numerous posttrial claims of ineffective assistance of counsel. *Id.* ¶¶ 104-05. We remanded the matter with instructions that the court conduct a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). *Maya*, 2017 IL App (3d) 150079, ¶ 105.

¶ 11 On remand, the court allowed the defendant to expound on his claims. The defendant's exposition, along with occasional questions from the court, spans 21 pages of record. Within that discourse, the defendant stated:

"Mr. George Lenard *** allowed me to have a tainted jury which had a correctional officer from the housing unit where I was housed named Kevin McGrath, who I had several altercations with who would tell other inmates about my case. Since my case was against a minor and—and two females, he would tell other inmates in hopes to have them attack me and who would come to my cell and verbally insult me. Before trial he knew who I was by me having a high profile case and eventually working on my *** POD [unit] nine times before trial ***. After I informed George Lenard about him, he responded telling me, 'Oh, well, we rather have him rather than anyone else or the venireman who's a State's Attorney.' In another occasion, after I informed him I didn't want him on my jury, he told me, 'Well, he said he was going to be fair.' This [correctional officer] clearly had hatred towards me so of course he was going to find me guilty."

¶ 12 The defendant also stated that he informed Lenard of his mental health history, but Lenard refused to order a psychological test to determine if he was fit to stand trial. The defendant testified that Lenard failed to subpoena the defendant's hospital records or to consider an insanity defense. The defendant stated that he had been diagnosed with psychotic disorder and had been prescribed medication for schizophrenia, depression, anxiety attacks, and panic attacks.

¶ 13 The court then called Lenard to testify. The court briefly examined Lenard. The court asked Lenard if he ever had a good-faith belief that there was an issue with the defendant's fitness or a proper defense of insanity. Lenard replied: "No, Judge. In fact, there was a lot of,

um, discussions between myself and [the defendant] that indicated the opposite." The court asked no questions related to McGrath or the composition of the jury. At a later date, after having reviewed the trial record and transcripts, the court found that the defendant had not shown a possible neglect of the case and declined to appoint counsel.

¶ 14                                    II. ANALYSIS

¶ 15       On appeal, the defendant argues that he sufficiently demonstrated possible neglect of his case, and that the circuit court's finding to the contrary was manifestly erroneous. Specifically, he claims that he showed that defense counsel possibly neglected his case in that counsel failed to (1) strike McGrath and (2) investigate the defendant's mental health issues. The defendant does not, however, challenge the procedures employed by the circuit court in conducting the preliminary inquiry.

¶ 16       Through *Krankel* and its progeny, our supreme court has developed a procedural framework for the resolution of *pro se* posttrial claims of ineffective assistance of counsel. Where a defendant makes a posttrial claim of ineffective assistance of counsel, the circuit court must conduct a preliminary inquiry into those claims. *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003). One goal of this preliminary inquiry is to allow the circuit court to create the necessary record for any claims raised on appeal. *People v. Jolly*, 2014 IL 117142, ¶ 38; see also *Moore*, 207 Ill. 2d at 81 (observing that appellate review is precluded where the circuit court makes no record of a defendant's claims). If, after this preliminary inquiry, the circuit court "determines that the claim lacks merit or pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion." *Moore*, 207 Ill. 2d at 78. If the court instead determines that there has been "possible neglect of the case," it must appoint new counsel to represent the defendant at a full hearing on his claims on ineffective assistance. *Id.*

¶ 17       A court's determination that a defendant's claim does not demonstrate a possible neglect of the case will be reversed where that decision is manifestly erroneous. *E.g.*, *People v. Robinson*, 2017 IL App (1st) 161595, ¶ 90. "Manifest error is error which is ' "clearly evident, plain, and indisputable." ' " *People v. Morgan*, 212 Ill. 2d 148, 155 (2004) (quoting *People v. Johnson*, 206 Ill. 2d 348, 360 (2002), quoting *People v. Ruiz*, 177 Ill. 2d 368, 384-85 (1997)).

¶ 18                    A. Failure to Strike McGrath From the Jury
¶ 19                              1. Procedural Arguments
¶ 20       We first consider the defendant's claim that the circuit court's ruling was manifestly erroneous where the court found that the defendant failed to show possible neglect of his case, based on defense counsel's failure to strike McGrath from the jury. We begin our analysis of this issue by addressing two procedural arguments raised by the State. First, the State contends that the defendant has forfeited his present argument by failing to raise it in his first direct appeal. The State's argument proceeds as follows:

          "Defendant raised in his direct appeal the issue that the trial judge failed to hold a *Krankel* hearing on his additional claims of ineffective assistance; therefore, this claim was known to defendant prior to the filing of his direct appeal. [Citation.] Defendant has forfeited in this second appeal review of this known issue of record by failing to raise it in his direct appeal."

¶ 21        This argument suffers from numerous flaws. Initially, the State seems to imply that by requesting a preliminary *Krankel* inquiry in his first direct appeal, the defendant has forfeited the actual claims of ineffectiveness that underlie that request. If this were the case, then the *Krankel* procedure would be rendered wholly meaningless. Moreover, that the present issue "was known to defendant prior to the filing of his direct appeal" is irrelevant. A number of facts pertinent to the defendant's claim—such as the substance of his conversations with counsel—were not on the record on his first appeal, thus requiring that a preliminary *Krankel* inquiry be held to establish the necessary record. See *Jolly*, 2014 IL 117142, ¶ 38.

¶ 22        Next, the State argues that the defendant's claim is refuted by his own posttrial filings. Specifically, it notes that the defendant did not mention McGrath by name in any of his three *pro se* posttrial filings and never included his allegation that McGrath incited other inmates to attack him. A bare claim of ineffectiveness, unsupported by any facts, is sufficient to require the circuit court to conduct a preliminary *Krankel* inquiry. *People v. Ayres*, 2017 IL 120071, ¶¶ 18-21. "[T]he primary purpose of the preliminary inquiry is to give the defendant an opportunity to flesh out his claim ***." *Id.* ¶ 20. The defendant's statements at the preliminary inquiry identifying McGrath by name and indicating that McGrath incited other inmates to attack the defendant did not contradict any of the defendant's previous claims. Rather, these statements merely elaborated on the defendant's previous claims—precisely the procedure contemplated by *Krankel* and its progeny.

¶ 23                                    2. Trial Strategy

¶ 24        We next address the State's argument that the court did not err in finding that the defendant failed to show possible neglect of his case because counsel's decision not to exercise a peremptory challenge on McGrath was a matter of trial strategy. Our supreme court has stated that the circuit court may decline to appoint new counsel following a preliminary *Krankel* inquiry where the defendant's claim "pertains only to matters of trial strategy." *E.g.*, *Moore*, 207 Ill. 2d at 78. We recognize that this statement, read most strictly, could imply that any claim possibly relating to trial strategy is *per se* exempt under *Krankel*. However, we find such a reading to be inconsistent with current precedent concerning claims of ineffective assistance of counsel based on trial strategy.

¶ 25        The standard under which all claims of ineffective assistance of counsel are analyzed was set forth in the seminal case of *Strickland v. Washington*, 466 U.S. 668 (1984). In establishing that standard, the United States Supreme Court cautioned that judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 689. The Court held: "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Our own supreme court has reaffirmed and emphasized this position on numerous occasions. See, *e.g.*, *People v. Coleman*, 183 Ill. 2d 366, 397 (1998) ("[A] defendant must overcome the strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not of incompetence."); *People v. Dupree*, 2018 IL 122307, ¶ 44; *People v. Peterson*, 2017 IL 120331, ¶ 80 ("[T]he strong presumption that counsel's strategy was sound may be overcome where counsel's decisions appear to be so irrational that no reasonably effective defense attorney in similar

- 5 -

circumstances would pursue such a strategy" (citing with approval *People v. Lewis*, 2015 IL App (1st) 122411, ¶ 85)).[2]

¶ 26    To be sure, both the United States and Illinois Supreme Courts have made clear that the notion of trial strategy presents a tall hurdle for a defendant raising a claim of ineffective assistance of counsel. But neither court has held that matters involving counsel's trial strategy are unavoidably or absolutely exempt from such a claim. Our supreme court's repeated references to overcoming the presumption of sound trial strategy necessarily dictate that that presumption can, in fact, be rebutted. See, *e.g.*, *People v. Miller*, 2013 IL App (1st) 110879, ¶ 84 ("[D]efendant rebutted the presumption that his counsel's decision not to attempt to suppress the statement constituted trial strategy ***.").

¶ 27    As the cases cited above demonstrate, a strict interpretation of our supreme court's statement that the circuit court may decline to appoint new counsel following a *Krankel* inquiry if the defendant's claim "pertains only to matters of trial strategy" (*e.g.*, *Moore*, 207 Ill. 2d at 78) is untenable. Given that a defendant may, at least potentially, overcome the strong presumption of sound trial strategy, a circuit court should not dismiss a claim of ineffectiveness on the bare fact that it may relate to trial strategy. As we explained above, *Krankel* and its progeny simply create a procedural framework for the resolution of posttrial claims of ineffectiveness. It would be illogical to hold such claims to a more rigorous standard than any other claim of ineffective assistance. It would make especially little sense in the context of the preliminary inquiry, where a defendant need not actually demonstrate ineffective assistance, but merely show possible neglect of the case. See *People v. Roddis*, 2018 IL App (4th) 170605, ¶¶ 97-100 (comparing the preliminary *Krankel* inquiry to the first stage of postconviction proceedings).

¶ 28    In reaching this conclusion, we are mindful of the fact that our supreme court, when identifying types of duties performed by counsel that are particularly strategic in nature, often uses strong language referring to their susceptibility to ineffectiveness challenges, calling certain actions "virtually unchallengeable" (*People v. Palmer*, 162 Ill. 2d 465, 476 (1994)) or "generally immune" (*People v. Enis*, 194 Ill. 2d 361, 378 (2000)) from ineffectiveness claims. We would note that even these cases use conditional language. Further, we are unaware of any case holding that claims of ineffectiveness are *per se* and absolutely barred where they touch on a matter of possible trial strategy.

¶ 29    This principle is illustrated in *People v. Manning*, 241 Ill. 2d 319 (2011), a case in which the supreme court considered a claim that counsel had been ineffective for failing to strike a juror during *voir dire*. After repeating that counsel's strategic decisions are "virtually unchallengeable," the court also pointed out that it had never previously held that counsel's actions during *voir dire* were subject to scrutiny under the *Strickland* standard. *Id.* at 333. Yet, the analysis proceeded. The court expressly considered the reasoning of allowing the juror in question to remain and postulated strategic reasons that counsel may have done so. *Id.* at 335. The court concluded:

> "Under these circumstances, given [the juror's] conflicting answers regarding his impartiality, we cannot say that counsel's decision to reserve his two remaining peremptory challenges was unreasonable. Thus, we disagree with defendant that [the

---

[2]In *People v. Lewis*, 2015 IL App (1st) 122411, ¶ 85, the First District cited cases in which defendants successfully overcame the presumption of sound trial strategy.

juror] was 'plainly and deeply biased,' and we conclude that counsel's actions were a part of his trial strategy and were not deficient under *Strickland.*" *Id.* at 336.

¶ 30    As *Manning* demonstrates, a claim that counsel's decisions in jury selection amounted to ineffective assistance is not wholly immune from review. Accordingly, we find that, under certain circumstances, even a claim of ineffective assistance of counsel that potentially relates to trial strategy may demonstrate possible neglect of the case, warranting the appointment of counsel and further posttrial proceedings.

¶ 31                                    3. Possible Neglect of the Case

¶ 32    Having found that a claim of ineffective assistance of counsel, potentially relating to trial strategy, may demonstrate possible neglect of the case, we consider whether the circuit court's determination that the defendant failed to establish possible neglect of the case was manifestly erroneous. In the instant case, the defendant asserted at the preliminary inquiry that a member of his jury worked as a correctional officer at the jail in which the defendant himself was detained, the Will County Adult Detention Facility (WCADF). Moreover, the defendant claimed that the correctional officer, McGrath, worked on the defendant's "POD," that the defendant and McGrath had engaged in "several confrontations," and that McGrath told other inmates details of the defendant's case to induce those inmates to harass the defendant. The defendant alleged that when he relayed this information to defense counsel, counsel assured the defendant that McGrath would be impartial and that counsel would rather have McGrath on the jury than " 'anyone else or the venireman who's a State's Attorney.' "

¶ 33    The primary fact alleged by the defendant is confirmed in the record. That is, the record of jury selection clearly shows that McGrath worked as a deputy correctional officer in Will County, was seated as an alternate on the defendant's jury, and eventually was seated on the jury proper when another juror became ill. Whether McGrath worked at WCADF or on the defendant's pod is unconfirmed in the trial record.[3] Further, as is to be expected, neither the actual extent of the defendant's relationship with McGrath nor the defendant's conversations with counsel on the subject are on the record.

¶ 34    Of course, the preliminary *Krankel* inquiry provided the opportunity for counsel to shed some light on the defendant's claims, at least in regard to any conversations between counsel and the defendant regarding McGrath. See *Moore*, 207 Ill. 2d at 78 ("During this [preliminary inquiry], some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is *** usually necessary in assessing what further action, if any, is warranted on a defendant's claim. Trial counsel may simply answer questions and explain the facts and circumstances surrounding the defendant's allegations."). Indeed, counsel testified at the preliminary inquiry. Troublingly, however, the court asked counsel no questions relating to the defendant's jury claim, and counsel did not otherwise offer any explanation. As of now, the defendant's claims stand unrebutted.

¶ 35    If the defendant's factual allegations are true, the seating of McGrath on the jury that eventually found the defendant guilty shocks the conscience. The claims that McGrath had altercations with the defendant in jail and induced other inmates to harass the defendant by sharing details of his case demonstrate *actual* malice and bias. Trial before a biased jury is

_____

[3]It is unclear if McGrath, as a correctional officer in Will County, *must* have worked at WCADF. We will not assume this to be the case.

structural error and requires automatic reversal. *People v. Thompson*, 238 Ill. 2d 598, 610 (2010). It is difficult to discern any potential strategy defense counsel might have for allowing a juror with demonstrated bias toward his client to serve on a jury.

¶ 36 We make no finding as to the credibility of the defendant's factual allegations. However, given the serious nature of the allegations, the absence of any explanation from defense counsel as to the facts and circumstances surrounding the allegations, and the fact that the record shows that McGrath was a Will County correctional officer, we hold that the circuit court's determination that the defendant failed to demonstrate *possible* neglect of the case was manifestly erroneous. Accordingly, we find that further proceedings on the defendant's posttrial claims of ineffectiveness are warranted under the circumstances presented in this case.

¶ 37              B. Failure to Investigate the Defendant's Mental Health Issues

¶ 38 We next address the defendant's argument that he showed possible neglect of the case based on his claim that defense counsel failed to investigate his mental health issues. Unlike the issue concerning McGrath, the circuit court addressed this issue at the preliminary *Krankel* inquiry. Specifically, the court asked defense counsel if he ever believed there was an issue with the defendant's fitness or a proper defense of insanity. Defense counsel replied: "No, Judge. In fact, there was a lot of, um, discussions between myself and [the defendant] that indicated the opposite." Also, the defendant's allegations regarding his history of mental illness were rebutted by the PSI, in which the defendant reported that he had never been diagnosed with a mental illness. Accordingly, the circuit court's determination that the defendant failed to show possible neglect of his case with regard to this claim was not manifestly erroneous.

¶ 39              III. CONCLUSION

¶ 40 The judgment of the circuit court of Will County is reversed. The matter is remanded for the appointment of new counsel to represent the defendant on his posttrial claim that defense counsel was ineffective for failing to strike McGrath from the jury.

¶ 41 Reversed and remanded.