2020 IL App (3d) 170829

Opinion filed December 10, 2020

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-17-0829 Circuit No. 16-CF-758 |
| STANLEY M. ALEXANDER, | ) ) | Honorable Paul P. Gilfillan, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE O'BRIEN delivered the judgment of the court, with opinion.
Justice Wright concurred in the judgment and opinion.
Justices Schmidt dissented, with opinion.

**OPINION**

¶ 1    Defendant, Stanley M. Alexander, appeals his conviction for aggravated battery. Defendant argues that (1) he was deprived of his right to present a defense where two witnesses were not permitted to testify that Ricky Alexander (Ricky) told them that he committed the offense rather than defendant, (2) defense counsel provided ineffective assistance when he failed to seek a continuance to investigate defendant's report that Ricky confessed to committing the offense in a recorded jail call, (3) the prosecutor engaged in misconduct during closing argument, and (4) the

circuit court committed reversible error during the preliminary *Krankel* inquiry (see *People v. Krankel*, 102 Ill. 2d 181 (1984)). We reverse and remand.

¶ 2                                    I. BACKGROUND

¶ 3        Defendant was charged with aggravated battery (720 ILCS 5/12-3.05(e)(1) (West 2016)) for shooting Odell Robinson with a handgun.

¶ 4        The State filed a motion *in limine* requesting that the court prohibit the defense from introducing the testimony of Jarita Sampson and Hermanda Alexander (Hermanda) that Ricky admitted to them that he was the driver of the vehicle involved in the incident and that he shot Robinson. The motion alleged that these statements were inadmissible hearsay. The motion stated that the statements were not admissible as statements against interest pursuant to Illinois Rule of Evidence 804(b)(3) (eff. Jan. 1, 2011) because there was an insufficient basis for their admissibility.

¶ 5        A hearing was held on the State's motion. The State argued that Sampson's and Hermanda's testimony should be barred because there was not sufficient evidence corroborating the trustworthiness of Ricky's statements to them. The court ruled that the testimony would be excluded unless the defense could later present evidence of the trustworthiness of the statements.

¶ 6        The matter proceeded to a jury trial. Robinson testified that on the day of the incident, he was talking to Seldrick Carpenter and a few other individuals on a street. A white vehicle pulled up to the curb. Robinson approached the vehicle and saw defendant sitting in the passenger seat. Defendant was in a relationship with Wendolyn Williams, the mother of Robinson's son. Robinson did not recognize the driver. Robinson greeted defendant and saw that defendant had a pistol. The driver also had a gun. Defendant frowned at Robinson and shot him in the penis. Robinson then ran up the street to wait for medical assistance. Later that day, Robinson identified defendant in a

2

photographic lineup as the person who shot him. Copies of the photographic lineup and forms that Robinson had signed before making the identification were admitted into evidence. Robinson testified that he had to use a catheter for two months as a result of his injuries.

¶ 7        Carpenter testified that he was speaking with Robinson and several other individuals on a street on the day of the incident. A white vehicle drove up and stopped near them. Carpenter did not know the person who was driving the vehicle. Defendant was the passenger. Robinson approached the vehicle. Defendant exited the vehicle to fight Robinson. Before defendant reached the back of the vehicle, shots were fired. Carpenter did not see defendant with a gun, and he did not know whether defendant or the driver shot Robinson. Carpenter could not recall telling a police officer on the day of the incident that the driver reclined in his seat and that defendant shot past the driver and hit Robinson. Carpenter acknowledged that he had "insinuated" to defense counsel the day before the trial that the driver must have been the shooter because defendant was outside the vehicle when the shooting started. Carpenter maintained that he did not see who the shooter was. Carpenter acknowledged that he had previously selected defendant out of a photographic lineup.

¶ 8        Detective Craig Williams testified that Robinson selected defendant as the shooter from a photographic lineup on the day of the shooting. Williams presented the photographic lineup to Robinson while he was being treated at the hospital. The presentation of the photographic lineup was video and audio recorded. The State labeled the recording as exhibit No. 3 and moved to admit it. Defense counsel did not object to the admission of the video, and it was played for the jury. While the video was being played, defense counsel requested to approach the bench, and the video was paused. A discussion between counsel and the court was held off the record. The court then stated:

"[T]he objection of the defendant is overruled. The purpose of this video is for foundational purposes to prior State Exhibits regarding a photo I.D. lineup. This is the video of that. Coincidently there is some treatment going on as you can see which is previously been identified to by Mr. Robinson himself. So—and I'm told it's not graphic and I'm told it's not extensive, the treatment side of it.

So we'll allow the video to be played from this point forward. Go ahead."

The video then continued to play.

¶ 9        In the video, Robinson was lying shirtless in a hospital bed. He was visible from the chest up. Detective Williams discussed the photographic lineup with Robinson, and Robinson made a selection. The photographic lineup itself was not visible in the video. At one point, a medical provider entered the room and told Robinson that they would need to insert a catheter. Robinson appeared to be reluctant. The provider told Robinson that he had to insert the catheter to make sure that Robinson's urethra would be okay. The provider said that if he did not insert the catheter and Robinson's urethra was injured, Robinson could have lifelong problems. The provider said that if they did not take care of the problem now, Robinson might have to have a metal rod inserted into his penis in the future. Robinson had tears in his eyes. At certain points in the video, medical workers could be seen walking behind Robinson's bed.

¶ 10        Detective Clint Rezac testified that he obtained surveillance video footage from a nearby car wash for the day and time of the shooting. The video recording showed the vehicle involved in the incident was visible in the distance in the corner of the screen. Rezac testified that a person was visible running away from the vehicle. This occurred in the distance and was difficult to discern from viewing the video.

4

¶ 11 Rezac interviewed Carpenter in connection with the shooting. A video recording of Rezac's interview with Carpenter was admitted into evidence and played for the jury. In the video, Carpenter said that the driver and passenger both had guns. Carpenter said he did not know which one shot first. Carpenter then said the passenger was attempting to exit the car and fired the first shot. Rezac asked if the passenger shot over the driver, and Carpenter said yes.

¶ 12 Defense counsel requested that the court revisit its ruling that Sampson and Hermanda would not be able to testify as to Ricky's out-of-court statements indicating that he was the shooter. Defense counsel argued that evidence had been presented during the State's case-in-chief that both defendant and the driver had guns, which corroborated the hearsay statements that Ricky shot Robinson. Defense counsel also noted that Carpenter admitted that he had told defense counsel that the driver must have been the shooter. The court adhered to its initial ruling.

¶ 13 The jury found defendant guilty of aggravated battery.

¶ 14 Defendant filed a *pro se* motion for a new trial alleging that he received ineffective assistance of counsel. Defendant also filed a motion for a new trial through counsel.

¶ 15 Defendant filed an amended *pro se* motion for a new trial, which included numerous claims. The motion included several claims of ineffective assistance of counsel, including claims that counsel was ineffective for failing to object to Robinson's video-recorded statement, move for a mistrial due to the prejudicial nature of Robinson's video-recorded statement at the hospital, and introduce a recording of a phone call between defendant and Ricky where Ricky admitted to committing the offense.

¶ 16 The court conducted a preliminary inquiry into defendant's *pro se* claims of ineffective assistance of counsel pursuant to *Krankel*, 102 Ill. 2d 181, and its progeny. Regarding defendant's claim that defense counsel should have objected to the admission of Robinson's video-recorded

5

statement, the court stated: "That video statement was fully vetted ahead of time, admitted appropriately, and it was admissible evidence. That's denied." With regard to the claim that counsel should have moved for a mistrial based on the prejudicial nature of the video recording of Robinson's hospital interview, the court stated: "This is actually a legitimate argument to make." Defendant stated that he did not believe there was any need for the video and that it prejudiced the jury in favor of Robinson. The court replied: "No question it prejudiced the jury. The question is whether it was appropriately admitted, and I found that it was."

¶ 17    The court proceeded to address defendant's claim that defense counsel was ineffective for failing to present a recorded jail call between defendant and Ricky in which Ricky confessed to shooting Robinson. The court asked defense counsel if defendant had told him that Ricky confessed to defendant over the phone. Defense counsel stated: "I believe so. I believe it was late. Didn't want to continue it." Defense counsel stated that the audio recording would have had the same admissibility issues as the hearsay statements Ricky allegedly made to Hermanda and Sampson.

¶ 18    The court asked whether there would be a difference between a recording of Ricky confessing to the offense and the testimony of Hermanda and Sampson that he confessed to them. The court asked the State if it believed that this was similar to the argument that it had ruled upon during the trial concerning Sampson's and Hermanda's testimony. The prosecutor stated:

> "[I]t's the same whether or not his statement was given to the defendant or whether it's given to a third person. It's still hearsay. The character of the statement by Ricky doesn't change because it's made to the defendant versus one of the other ladies. Still hearsay. So, still objectionable."

¶ 19    The court asked whether the fact that the call was recorded would constitute corroborating circumstances. Defense counsel stated that he believed the corroboration concerned the underlying information in the statement, not the fact that the statement was made. The court stated: "All right. On that basis, it being a closer call than many of the others we heard here today, I'm going to deny that. Let [defendant] know his record is protected on appeal if it gets to appeal on that particular claim."

¶ 20    The court sentenced defendant to 12 years' imprisonment.

¶ 21                                    II. ANALYSIS

¶ 22    We first address defendant's argument that the matter should be remanded for the appointment of new counsel and further posttrial proceedings because defendant showed defense counsel's possible neglect of the case with regard to his claims that counsel was ineffective for failing to investigate the recorded jail call in which Ricky allegedly confessed to the offense and for failing to object to the admission of the video recording of Robinson's interview at the hospital. We find that defendant has shown possible neglect of the case.

¶ 23    A common law procedure for considering *pro se* posttrial claims of ineffective assistance of counsel has developed from our supreme court's decision in *Krankel* and its progeny. See *People v. Jackson*, 2020 IL 124112, ¶¶ 95-97. When a defendant raises a *pro se* posttrial claim of ineffective assistance of counsel, the circuit court is to conduct an inquiry into the factual basis of the claim. *Id.* ¶ 97. If the court determines that the claim "lacks merit or pertains only to matters of trial strategy," it may dismiss the motion without appointing new counsel. *Id.* However, if the defendant's allegations show possible neglect of the case, new counsel should be appointed to represent the defendant on his or her claims of ineffective assistance of counsel. *Id.*

7

¶ 24        At the preliminary *Krankel* inquiry, the circuit court may consider the legal merits of the claim as well as the factual basis for the claim. *People v. Roddis*, 2020 IL 124352, ¶ 61. The court may " 'base its evaluation of the defendant's *pro se* allegations of ineffective assistance on its knowledge of defense counsel's performance at trial and the insufficiency of the defendant's allegations on their face.' " *Id.* ¶ 56 (quoting *People v. Moore*, 207 Ill. 2d 68, 79 (2003)).

¶ 25        "A court's determination that a defendant's claim does not demonstrate a possible neglect of the case will be reversed where that decision is manifestly erroneous." *People v. Maya*, 2019 IL App (3d) 180275, ¶ 17. Manifest error occurs when an error is clearly evident, plain, and indisputable. *Id.*

¶ 26        Here, manifest error occurred when the court determined that defendant did not show possible neglect of the case regarding his claim that defense counsel failed to investigate the jail call between him and Ricky. It was not clear on the face of defendant's allegations or from defense counsel's statements at the *Krankel* inquiry that this claim lacked merit or that counsel's actions were the result of sound trial strategy. Defense counsel acknowledged that defendant had told him about the call and that he failed to investigate it. Defense counsel explained that he did not investigate the call because he did not want to continue the case and he did not believe the call would be admissible. However, a recording of another individual confessing to the offense would have been an important piece of evidence, and it was unreasonable for counsel not to seek a continuance to attempt to obtain it. Also, it was not clear on the face of defendant's motion that the call would have been inadmissible. Defense counsel argued before and during the trial that other hearsay statements from Ricky were admissible, and appellate counsel argues in this appeal that these statements should have been admitted. A recording of Ricky confessing to the offense may have affected the court's analysis as to whether any or all of Ricky's hearsay statements were

8

sufficiently corroborated in order to be admissible. To be clear, we make no determination as to whether the recorded phone call would ultimately be admissible. We merely hold that defendant has established possible neglect such that he should be permitted to present this claim with the assistance of new counsel.

¶ 27     We reject the State's argument that defense counsel stated at the *Krankel* inquiry that *defendant* did not want to continue the case for counsel to investigate the call, not that *counsel* did not want to continue the case. Defense counsel's statement, "[d]idn't want to continue it," was arguably ambiguous. However, we interpret it to mean that defense counsel did not want to continue the case. Defendant's *pro se* motion indicated that he wanted counsel to introduce the call into evidence at trial. It was not clear based on counsel's statement at the *Krankel* hearing that defendant was unwilling to continue the case to attempt to accomplish this.

¶ 28     The dissent asserts that the record makes it apparent that defendant, not counsel, was the one unwilling to agree to a continuance. The dissent quotes an excerpt from the proceedings on the day the trial was set to commence. *Infra* ¶ 41. In that excerpt, defense counsel indicated that he would likely need a continuance to investigate an important potential witness that he discovered when reading a report he had misplaced, but defendant did not agree to continuing the matter for two months. The record indicates that the witness at issue was Sampson. The court told defense counsel to attempt to subpoena her that day. The record shows that a subpoena was issued and served upon Sampson that day. The court later ruled that Sampson would not be permitted to testify regarding Ricky's hearsay statements.

¶ 29     We do not believe that the excerpt cited by the dissent shows that defendant would not have agreed to a continuance to obtain the recorded jail calls. The excerpt involved an entirely different situation. It is speculative to assume that defendant's reluctance to agree to a continuance

9

to secure Sampson as a witness shows that he was unwilling to agree to a continuance to obtain the recorded jail calls. Also, while defendant stated he did not "agree with that long continuing stuff," he did not ultimately have to choose between securing Sampson's appearance and continuing the case. It is unclear whether he would have objected to a continuance if Sampson had not been subpoenaed that day.

¶ 30 Defendant has also shown possible neglect concerning his *pro se* claim that counsel was ineffective for failing to object to the admission of Robinson's hospital video. While the record indicates that defense counsel objected to some portion of the video off the record, counsel did not object to the admission of the video on the basis that its probative value was substantially outweighed by the danger of unfair prejudice. Illinois Rule of Evidence 403 (eff. Jan. 1, 2011) provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

¶ 31 The hospital video had very little probative value. The video showed Williams explaining the photographic lineup to Robinson and Robinson writing. However, both Robinson and Williams had already testified that Robinson selected defendant out of a photographic lineup, and the photographic lineup had already been admitted into evidence. The video did not actually show the photograph that Robinson circled. As the circuit court acknowledged, the video was prejudicial to defendant. The video showed Robinson in a hospital bed. A medical provider explained to Robinson why he would need a catheter, and Robinson had tears in his eyes.

¶ 32 While decisions regarding what matters to object to are generally matters of trial strategy (*People v. Perry*, 224 Ill. 2d 312, 344 (2007)), we can think of no sound trial strategy for not objecting to the admission of the video. Also, it was not clear on the face of defendant's allegations

10

that his claim lacked merit. Accordingly, the circuit court's finding that defendant did not demonstrate possible neglect regarding this claim was manifestly erroneous.

¶ 33        Because defendant has shown possible neglect of the case concerning his claims that defense counsel was ineffective for failing to investigate the jail call between him and Ricky and object to the hospital video, remand is required for the appointment of counsel and further posttrial proceedings. Accordingly, we need not address defendant's alternative arguments that the matter should be remanded for a new preliminary *Krankel* inquiry based on the circuit's court's application of an improper standard or the State's improper participation at the first *Krankel* inquiry.

¶ 34        The dissent asserts that defendant's claim related to the hospital video was limited to the question of whether the circuit court applied the incorrect standard at the *Krankel* inquiry. We disagree. We acknowledge that, in defendant's brief, the subheading for this argument merely stated: "The circuit court applied the wrong standard during the *Krankel* inquiry." However, substantively, defendant raised two distinct, alternative arguments. First, defendant argued that the circuit court applied the incorrect standard at the *Krankel* inquiry by requiring him to conclusively establish his claims of ineffective assistance of counsel. Second, defendant argued that he satisfied the correct *Krankel* standard—*i.e.*, established possible neglect of the case—with regard to his claims that defense counsel was ineffective for failing to investigate the jail calls or object to the hospital video. A finding that defendant showed possible neglect of the case would warrant remand for the appointment of counsel and further posttrial proceedings, whereas a finding that the court applied the wrong standard would merely warrant remand for a new preliminary *Krankel* inquiry. Defendant requested both of these alternative forms of relief, depending on our findings. Again, because we have remanded the matter for the appointment of counsel upon finding that defendant

11

established possible neglect, we need not consider whether defendant should receive a new preliminary *Krankel* inquiry based on the court's alleged application of an incorrect standard at the first *Krankel* inquiry.

¶ 35 Because we have remanded the matter for the appointment of counsel and further proceedings on defendant's posttrial motion, we do not address the three other issues raised in this appeal—namely, whether (1) the court deprived defendant of his constitutional right to present a defense by refusing to admit Sampson's and Hermanda's testimony that Ricky told them that he committed the offense rather than defendant, (2) defense counsel was ineffective for failing to seek a continuance to investigate the recorded jail call in which Ricky allegedly confessed to defendant, and (3) the prosecutor committed misconduct during closing argument. The outcome of these issues may be affected by the outcome on the proceedings on remand. If the court does not grant defendant a new trial following the posttrial proceedings on remand, defendant may still appeal to this court based on his posttrial claims of ineffective assistance of counsel or the other issues raised in the instant appeal that we have not addressed. See *Krankel*, 102 Ill. 2d at 189.

¶ 36                                                 III. CONCLUSION

¶ 37 The judgment of the circuit court of Peoria County is reversed. The matter is remanded for the appointment of counsel to assist defendant in advancing his *pro se* claims of ineffective assistance of counsel.

¶ 38 Reversed and remanded.

¶ 39 JUSTICE SCHMIDT, dissenting:

¶ 40 The majority holds that defendant has shown possible neglect of his case by counsel with regard to two of his claims of ineffective assistance of counsel raised at a preliminary *Krankel* inquiry. I disagree and therefore respectfully dissent.

12

¶ 41    As to the first claim, concerning the alleged recorded confession, I agree with the State that when viewing counsel's actions within the context of the record, it becomes apparent that it was defendant who was unwilling to endure the length of any required continuance to obtain the recorded confession, not counsel. The following exchange is telling.

"MR. ROSE [(DEFENSE ATTORNEY)]: Judge, the situation is such that I'm looking to continue the matter briefly. The problem that I foresee is the State says they have things set.

THE COURT: They have what?

MR. ROSE: Other matters set in the near future which creates the problem. What occurred is I discovered over the weekend a report that was misplaced. I don't know what we want to call it.

Anyhow I found it in a location where I didn't expect to that includes a potential witness that I think is extremely important to the Defense. As a result of that, I would be asking to continue it.

Mr. Alexander's been in custody a long time. If the Court recalls, Mr. Smith had the matter for—for a period of time, and the missed report is my fault for not finding it clearly.

I don't have any problem with absorbing that responsibility, but Mr. Alexander certainly doesn't want to continue it into December which I think is what the State is looking at so that's where we are, and I would be asking..

THE COURT: Ms. Straub?

MS. STRAUB [(ASSISTANT STATE'S ATTORNEY)]: Well, Judge, the State's ready for trial. I understand Mr. Rose took this over from

13

Mr. Smith, but we have witnesses ready and able to go forward today as it's scheduled.

I have reviewed my calendar with Mr. Rose when he said that this was possible, and there is no way that I could do this before the normal trial setting in this court which would be—I think it's December 18. We have several in custodies week after week that are pressing.

THE COURT: Okay. Well, Mr. Rose, you've discovered a name, and your client—well, you've talked with your client about that, and you're saying that, and you're saying that this is an important witness for the Defense?

MR. ROSE: No question about that.

THE COURT: Okay.

MR. ROSE: I think Stanley agrees with that; true?

THE DEFENDANT: Yeah, I do, but I don't—

\*\*\*

THE DEFENDANT: I don't agree with that long continuing stuff.

THE COURT: Wait a minute. I didn't—did you want—I didn't hear it. Did you want me to hear that, Mr. Rose?

MR. ROSE: It's fine. What he—what he said is he agrees it's an important witness. He doesn't agree with a long continuance or that long of a continuance."

¶ 42      The majority interprets what they deem an "arguably ambiguous" statement to find counsel refused to continue the case to obtain the recorded confession. *Supra* ¶ 27. I believe it is evident

14

from the above that defendant was not amenable to the continuance required to retrieve either the recorded confession or the in-person testimony of an "important witness." Even if defendant's statements are less than unequivocal, I interpret his statement to the court to mean that he consented to foregoing the continuance required to obtain the recording. Accordingly, it would be manifestly unfair to allow a second trial upon the basis of error that defendant injected into the proceedings. *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004).

¶ 43 Further, the majority declines to opine on the admissibility of the alleged recorded confession. This is not surprising in-and-of-itself; however, if the confession was not admissible as trial counsel believed, the decision not to present inadmissible evidence at trial would undoubtedly fall within the category of trial strategy. See *Jackson*, 2020 IL 124112, ¶ 97 (noting if the circuit court determines that the claim pertains only to matters of trial strategy, then the court need not appoint new counsel and may deny the *pro se* motion). Of course, we have no way of knowing whether the confession is admissible or whether it would be sufficient corroboration to change the lower court's evidentiary ruling as it is not before us. See *supra* ¶ 26 (majority states recording *may* have impacted evidentiary rulings). We are not even certain the recording exists.

¶ 44 Moving on to the second claim, defendant alleges the court failed to follow proper procedure when conducting the initial *Krankel* hearing. Citing a case from the Fourth District, defendant argues the circuit court was barred from reaching the merits of his ineffective assistance of counsel claims. See *People v. Roddis*, 2018 IL App (4th) 170605. The Illinois Supreme Court has since found that the notion a court is precluded from ruling on the merits of an ineffective assistance claim at an initial *Krankel* hearing erroneous. See *Roddis*, 2020 IL 124352, ¶ 48.

¶ 45 Here, defendant's argument to this court only relates to whether the circuit court applied "the wrong standard" at the initial *Krankel* hearing. This notwithstanding, the majority recasts the

15

contention as an argument that defendant showed possible neglect on the part of counsel regarding the hospital video. "Our adversary system is designed around the premise that the parties know what is best for them, and are responsible for advancing the facts and arguments entitling them to relief." *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in the judgment, joined by Thomas, J.). The majority asserts that defendant presented an alternative argument of possible neglect under the heading explicitly arguing the "wrong standard" was used. I disagree. I would address this meritless argument regarding the "standard" used as defendant presents it instead of recharacterizing it as an additional claim of possible neglect on the part of counsel.

¶ 46 Moreover, as acknowledged above, counsel objected to the video off the record. No one knows the contents of this objection. We also do not know at what point in the video he made this objection. However, my colleagues fault counsel for not objecting pursuant to Rule 403 prior to its admission. *Supra* ¶ 30. Without knowing at what point in the video counsel made the objection and the substance of the objection, I am not as willing to find neglect.

¶ 47 I believe postconviction proceedings are a more appropriate avenue for defendant's claims of ineffective assistance of counsel. See *People v. Veach*, 2017 IL 120649, ¶ 46 (ineffective assistance of counsel claims may sometimes be better suited to collateral proceedings when the record is incomplete or inadequate for resolving the claim); accord *People v. Parker*, 344 Ill. App. 3d 728, 737 (2003). There, defendant can form a record that would remove the need for interpretation and conjecture as to what was said as well as confirm the existence and contents of the alleged recorded confession.

¶ 48 "Manifest error occurs when an error is clearly evident, plain, and indisputable." *Supra* ¶ 25 (citing *Maya*, 2019 IL App (3d) 180275, ¶ 17). The majority's speculation and interpretation

16

in order to reach the end result in this matter evidences that any error is not clearly evident, plain, or beyond dispute. It is for those reasons I dissent from the conclusion that this matter requires remand for the appointment of new counsel and further *Krankel* proceedings.

**No. 3-17-0829**

| | |
|---|---|
| **Cite as:** | *People v. Alexander*, 2020 IL App (3d) 170829 |
| **Decision Under Review:** | Appeal from the Circuit Court of Peoria County, No. 16-CF-758; the Hon. Paul P. Gilfillan, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Peter A. Carusona, and Amber Hopkins-Reed, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | Jodi Hoos, State's Attorney, of Peoria (Patrick Delfino, Thomas D. Arado, and Nicholas A. Atwood, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

18