NOTICE

Decision filed 05/12/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 190426-U

NO. 5-19-0426

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Williamson County. |
| | ) | |
| v. | ) | No. 17-CF-700 |
| | ) | |
| DIMITRI JOHNSON, | ) | Honorable |
| | ) | Brian D. Lewis, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CATES delivered the judgment of the court.
Justices Wharton and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: We remand this case with directions for the trial court to conduct a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), and its progeny, because the trial court did not conduct an inquiry into the defendant's *pro se* allegations of ineffective assistance of counsel and the appointment of new counsel did not satisfy *Krankel*.

¶ 2    Following a jury trial, the defendant, Dimitri Johnson, was found guilty of unlawful possession of cannabis (720 ILCS 550/4(d) (West 2016)) and unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2016)). On appeal, the defendant contends that the trial court failed to conduct an inquiry into the defendant's *pro se* allegations of ineffective assistance trial counsel and that the appointment of posttrial counsel did not

1

cure the trial court's error in failing to conduct a preliminary inquiry. The defendant also contends that he was denied a fair trial because the prosecutor made several improper remarks during the rebuttal portion of the State's closing argument, or in the alternative, that trial counsel was ineffective for failing to properly preserve this claim for our review. For the following reasons, we remand this case to the trial court for a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), and its progeny, into the defendant's *pro se* allegations of ineffective assistance of counsel.

¶ 3                                                BACKGROUND

¶ 4     A summary of the evidence presented at the defendant's trial is as follows. On December 19, 2017, at approximately 10 a.m., Detective Jesse Thompson and Sergeant Warren Blake were conducting surveillance at the defendant's residence located at 2600 North 8th Street in Herrin, Illinois, as part of an investigation of the defendant. Detective Thompson and Sergeant Blake were in an unmarked car that had no police lights, sirens, or recording capabilities. Detective Justin Dwyer was in a separate vehicle located approximately two blocks away from the residence. Police Chief Tondini was also nearby in her own vehicle. Officer Robert Kraemer, a K-9 handler, was in his K-9 unit located near the Marion, Illinois, city limits.

¶ 5     At approximately 12:30 p.m., the defendant and his girlfriend, Jessica Keeling, exited the residence. The defendant was carrying a black duffel bag. The defendant and Keeling got into a white 2005 Mercury Mountaineer registered to Keeling. The Mercury was a four-dour SUV with tinted windows. Keeling entered the front, driver's side, and the defendant entered the front, passenger side, placing the duffel bag on the floorboard by his

2

feet. An individual by the name of Jaylyn Phillips sat in the rear passenger's side seat. A pit bull dog sat in the rear middle seat. Keeling's child sat in the rear driver's side seat.

¶ 6    The Mercury left the residence, and Detective Thompson and Sergeant Blake followed the vehicle. At various times during the Mercury's travels on its way through Herrin to Marion different officers followed the Mercury in their respective vehicles. During this time, Detective Dwyer was informed over the radio that Detective Thompson had observed Keeling commit a traffic violation, by making an abrupt right turn. Specifically, Keeling "failed to provide the mandatory 200 feet of notification for indicating [her] intention to make a turn." Because Detective Thompson did not have police lights or a siren, Officer Kraemer was asked to initiate a traffic stop on the Mercury. Officer Kraemer, who was several blocks away, went to the location of the Mercury and activated his lights to stop the vehicle. Detective Thompson and Officer Kraemer both participated in the traffic stop, which occurred approximately 20 to 30 minutes after the Mercury originally left the residence.

¶ 7    Once the Mercury was stopped, Detective Thompson and Officer Kraemer approached the vehicle. Deputy Thompson approached the passenger side of the Mercury, and Officer Kraemer approached the driver's side. A K-9 was present at the scene but was not used to "walk around the vehicle." Detective Thompson requested that the occupants of the Mercury roll down their windows because he could not see inside. The occupants complied. Once the windows were rolled down, Detective Thompson immediately detected an odor of cannabis and saw a metal cannabis smoking pipe in the "passenger side door pocket." Detective Dwyer also approached the vehicle, and as he did so, detected an odor

3

of raw cannabis coming from the Mercury. Detective Thompson ordered the occupants to exit the Mercury. The defendant, Keeling, and Phillips exited the Mercury along with the pit bull. Keeling's child remained inside the car.

¶ 8    After the defendant, Keeling, and Phillips exited the Mercury, Detective Thompson removed the black duffel bag from the floorboard of the vehicle where the defendant had been seated. The duffel bag was partially unzipped, but Detective Thompson could not see inside the bag. Detective Thompson unzipped the duffel bag and when he looked inside, saw a firearm and a bag containing suspected cannabis. The firearm was a 9-millimeter pistol with a magazine containing 16 rounds of ammunition. The bag of suspected cannabis weighed 116 grams. The suspected cannabis field-tested positive for cannabis.

¶ 9    At the scene of the stop, Detective Dwyer interviewed the defendant. Detective Dwyer provided the defendant with *Miranda*[1] warnings. The defendant indicated that he understood his rights. The defendant then stated that the contents of the black duffel bag belonged to him. He indicated that he was holding the pistol for a friend and that the other occupants of the Mercury were unaware of what was in the duffel bag. The defendant had asked Keeling to run an errand for him and did not elaborate any further. The defendant claimed that prior to the traffic stop, he was planning to return the firearm to its original owner. The defendant told Detective Dwyer that the defendant had never fired the gun, but he had taken it "in and out of the bag several times." He admitted that his fingerprints would be found on the weapon. Detective Dwyer ran a criminal history check of the

_____

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

4

defendant and learned that he was a convicted felon. The defendant was placed under arrest and transported to the police station. The interview of the defendant at the scene of the stop was not recorded.

¶ 10 Keeling and Phillips were also provided with *Miranda* warnings and interviewed at the scene. Keeling was issued a traffic citation. Phillips was cited for possession of drug paraphernalia for the metal cannabis smoking pipe. Keeling and Phillips were allowed to leave the scene of the traffic stop.

¶ 11 At the police station, Detective Dwyer interviewed the defendant a second time. The defendant was again provided with *Miranda* warnings and signed a *Miranda* waiver form. The defendant told Detective Dwyer that the firearm belonged to a friend who lived near the defendant. The defendant stated that his friend's house had been raided by law enforcement, and, during the raid, the officers had missed the pistol. The defendant made a written statement in which he wrote: "Jessica Keeling and Jaelyn Phillips were completely unaware of the cannabis and firearm in the vehicle." When Detective Dwyer told the defendant that officers were obtaining a search warrant for his residence, he became emotional and started to cry. He told Detective Dwyer that there was three-quarters of a pound of cannabis in a cooler inside the defendant's bedroom closet. The defendant also told Detective Dwyer that there were vials of cannabis wax inside the defendant's bedroom. The defendant indicated that he was the only person at the residence who was aware of the cannabis and cannabis wax. The interview of the defendant at the police station was not recorded.

¶ 12    Officers obtained a search warrant for the defendant's residence. When the officers arrived at the defendant's residence, Keeling's mother, who was the landlord, allowed the officers inside the residence. Detective Dwyer searched the defendant's closet and located the cooler. When Detective Dwyer opened the cooler, he detected an odor of raw cannabis and observed a large bag of suspected cannabis. The bag of suspected cannabis weighed approximately 372 grams and field-tested positive for cannabis. The cooler also contained packaging material, a cup with cannabis residue, a digital scale, and plastic baggies. A tag was taped to the side of the cooler that bore the defendant's name and phone number. Vials of suspected cannabis wax, a shipping box, and a payment receipt were also found in the residence. The shipping box and payment receipt contained the defendant's name and listed his address as 2600 North 8th Street, Herrin, Illinois.

¶ 13    Danielle Adair, a forensic scientist at the Illinois State Police crime lab, determined that the suspected cannabis found in the cooler weighed 335 grams and tested positive for cannabis. She did not analyze the suspected cannabis from the duffel bag or the cannabis wax because the total weight did not exceed 500 grams, which would have been necessary to obtain a higher class of felony charge.

¶ 14    At trial, the parties stipulated that the defendant was a convicted felon. The defendant did not testify or present any evidence. Following deliberations, the jury found the defendant guilty of unlawful possession of cannabis and unlawful possession of a weapon by a felon.

¶ 15    The defendant filed a motion for new trial alleging that the trial court erred by denying a motion *in limine* filed by the defendant, admitting certain evidence, limiting

6

defense *voir dire* concerning the defendant's prior felony conviction, and denying the defendant's motion for a directed verdict at trial. At a hearing, the trial court denied the defendant's motion for a new trial and proceeded to sentencing. During the sentencing hearing, the defendant made a statement in allocution in which he stated the following:

"For one, I would like to bring to the Court's attention that I felt a prior ineffect—provided ineffectual counsel due to the fact that during the course of my trial testimonies were given that should have been objected to; that there were no recorded or written evidence factually lies.

But in this case it was—it was my lawyer's responsibility to address these matters as well as providing me with my discovery in a timely manner, a discovery in which I've still yet to see.

I hope these things would be considered in finding a proper sentence for me."

The defendant also requested a furlough so that he could attend to some family matters before any term of imprisonment. The trial court asked trial counsel, "Anything?" to which trial counsel stated, "No, Your Honor." The trial court sentenced the defendant to 6 years in the Illinois Department of Corrections (IDOC) for the unlawful possession of cannabis conviction and 10 years in IDOC for the unlawful possession of a weapon by a felon conviction. These sentences were ordered to run concurrently and be followed by two years of mandatory supervised release.

¶ 16    Trial counsel filed a motion to reconsider sentence alleging that the defendant's sentence was excessive in light of the evidence at trial. The motion to reconsider sentence

7

further alleged that the trial court failed to give weight to statutory and nonstatutory mitigating factors.

¶ 17    Trial counsel subsequently sought to withdraw as the defendant's attorney because the defendant had indicated at sentencing that he believed trial counsel provided ineffective assistance. The trial court allowed trial counsel to withdraw and appointed new posttrial counsel to represent the defendant. Posttrial counsel did not file any motion concerning the defendant's *pro se* allegations of ineffective assistance of counsel. The trial court held a hearing on the defendant's motion to reconsider sentence and denied the motion. The defendant's *pro se* allegations of ineffective assistance of counsel were not discussed at this hearing. This appeal followed.

¶ 18                                    ANALYSIS

¶ 19    On appeal, the defendant contends that the trial court failed to conduct an inquiry into the defendant's *pro se* allegation of ineffective assistance of counsel and that the appointment of posttrial counsel did not cure the trial court's error in failing to conduct a preliminary inquiry. The defendant asks this court to remand his case for a preliminary inquiry into his *pro se* allegations. The State concedes error and agrees that this case should be remanded for the purpose of conducting a preliminary *Krankel* inquiry. We agree.

¶ 20    The common law procedure that has developed from *Krankel* and its progeny is triggered when a defendant raises a *pro se* posttrial claim of ineffective assistance of counsel. *People v. Jackson*, 2020 IL 124112, ¶ 96. When the defendant makes such a claim, the trial court should first conduct an inquiry into the claim's factual basis. *Jackson*, 2020 IL 124112, ¶ 97. If the trial court finds that the claim lacks merit or pertains only to matters

8

of trial strategy, the court is not required to appoint new counsel and may deny the *pro se* motion. *Jackson*, 2020 IL 124112, ¶ 97. If the allegations show possible neglect of the case, however, new counsel should be appointed to represent the defendant. *Jackson*, 2020 IL 124112, ¶ 97. New counsel then represents the defendant at a hearing on the defendant's *pro se* claim of ineffective assistance of counsel. *Jackson*, 2020 IL 124112, ¶ 97. When new *Krankel* counsel is appointed, counsel must independently evaluate the defendant's *pro se* claims and present those with merit to the trial court at a hearing on the defendant's claims. *People v. Reed*, 2018 IL App (1st) 160609, ¶ 52. If *Krankel* counsel does not find any meritorious claims, counsel should withdraw. *Reed*, 2018 IL App (1st) 160609, ¶ 52.

¶ 21 If the trial court has failed to conduct any inquiry into the defendant's *pro se* claims, the case should be remanded for the trial court to conduct a preliminary inquiry. *People v. Moore*, 207 Ill. 2d 68, 79 (2003). The primary purpose of the preliminary inquiry is to afford the defendant an opportunity to flesh out his or her claims of ineffective assistance of counsel so that the trial court can determine whether it is necessary to appoint new counsel. *People v. Ayres*, 2017 IL 120071, ¶ 20. Allowing trial counsel to withdraw and appointing new posttrial counsel to represent the defendant does not satisfy the *Krankel* procedure. *Reed*, 2018 IL App (1st) 160609, ¶ 51. The trial court must conduct some type of inquiry into the factual basis, if any, of the defendant's *pro se* posttrial claims of ineffective assistance of counsel. *Reed*, 2018 IL App (1st) 160609, ¶ 51. In conducting this inquiry, some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the ineffective assistance claims is permissible, and usually necessary, to assess whether further action is warranted. *Ayres*, 2017 IL 120071, ¶ 12. The

9

trial court may also discuss the allegations with the defendant. *Ayres*, 2017 IL 120071, ¶ 12. Finally, the trial court can base its evaluation on its personal knowledge of trial counsel's performance at trial and the insufficiency of the defendant's claims. *Ayres*, 2017 IL 120071, ¶ 12. The goal of *Krankel* proceedings is to facilitate the trial court's full consideration of a defendant's *pro se* claims of ineffective assistance of counsel, thereby potentially limiting the issues on appeal. *Ayres*, 2017 IL 120071, ¶ 13.

¶ 22 Here, during his statement in allocution at sentencing, the defendant made a *pro se* allegation of ineffective assistance of counsel sufficient to trigger a preliminary inquiry. The trial court conducted no such inquiry and proceeded with sentencing. After sentencing, trial counsel filed a motion to reconsider sentence but subsequently sought leave to withdraw because of the defendant's allegations during sentencing. Trial counsel was granted leave to withdraw, and new posttrial counsel was appointed to represent the defendant. Posttrial counsel did not file any motion concerning the defendant's *pro se* allegations of ineffective assistance of counsel. At the hearing on the motion to reconsider sentence filed by trial counsel, posttrial counsel only argued the previously filed motion to reconsider sentence. The defendant's *pro se* allegations of ineffective assistance of counsel were not discussed. Because the trial court failed to conduct the required inquiry into the defendant's claims and the appointment of posttrial counsel did not satisfy the *Krankel* procedure, we must remand this matter so that the trial court may conduct a preliminary inquiry into the defendant's allegations of ineffective assistance of counsel.

¶ 23 Because we are remanding this matter to allow the trial court to conduct a preliminary inquiry, we decline to address the defendant's claim on appeal that he was

10

denied a fair trial because of several improper remarks made during the State's closing argument, or in the alternative that trial counsel was ineffective for failing to properly preserve this claim for our review. See *People v. Bell*, 2018 IL App (4th) 151016, ¶ 37. Depending on the result of the preliminary inquiry, the defendant's remaining claim may be moot. *Bell*, 2018 IL App (4th) 151016, ¶ 37. If the trial court does not grant the defendant a new trial following the proceedings on remand, the defendant may still appeal to this court based on his posttrial claims of ineffective assistance of counsel or the closing argument issue raised in the instant appeal that we have not addressed. See *People v. Alexander*, 2020 IL App (3d) 170829, ¶ 35 (citing *Krankel*, 102 Ill. 2d at 189). We direct appellate counsel to provide copies of their briefs to the trial attorneys and the trial court on remand. See *Bell*, 2018 IL App (4th) 151016, ¶ 37.

¶ 24    For the foregoing reasons, we remand this matter to the trial court with directions that the court conduct a proper inquiry into the defendant's *pro se* posttrial allegations of ineffective assistance of counsel.

¶ 25    Remanded with directions.