2020 IL App (1st) 150978-U

SECOND DIVISION
December 29, 2020

No. 1-15-0978

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 11 CR 12410 (03) |
| | ) | |
| CARDELL TAYLOR, | ) | The Honorable |
| | ) | Geary W. Kull, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

*HELD*: Upon our prior limited remand for a preliminary *Krankel* inquiry, trial court's denial of defendant's request for the appointment of counsel was not improper for considering both the factual and legal merits of the ineffectiveness claim, pursuant to supreme court's recent decision in *Roddis*, 2020 IL 124352. However, trial court's denial was manifestly erroneous, as court relied on extraneous and incorrect mischaracterizations of evidence presented in the record and admitted it did not have recollection of said evidence. Accordingly, this cause is reversed and remanded for the appointment of *Krankel* counsel and a full *Krankel* hearing, and jurisdiction is retained.

¶ 1    Upon limited remand and direction of this Court, defendant-appellant Cardell Taylor's (defendant) cause was ordered back to the trial court for hearing with respect to allegations of ineffective assistance of trial counsel.  Following that hearing, at which defendant and defense counsel appeared, the trial court held that the allegations of ineffectiveness were not only meritless but also did not meet the prejudice prong of *Strickland v. Washington*, 466 U.S. 668 (1984).  Defendant now appeals the trial court's holding on limited remand, contending that the court committed reversible error by ruling on the merits of his claim instead of appointing new counsel pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), as he demonstrated possible neglect of his case.  He asks that, based on the reasons in his original opening and reply briefs, we reverse his convictions and remand for a new trial; or, that we remand his cause for appointment of new counsel to litigate his ineffective assistance claim based on the instant supplemental contentions herein; or, alternative to all this and if no further hearing is ordered, that we vacate seven of his eight convictions based on his original briefs filed on appeal.  For the following reasons, we reverse and again remand his cause to the trial court, this time for appointment of new counsel to litigate defendant's ineffective assistance claim, and we again retain jurisdiction over this cause as a whole.

¶ 2                                    BACKGROUND

¶ 3    As our ruling concerns only the subsequent hearing regarding ineffectiveness of trial counsel that took place pursuant to our remand, we recount for the record only those facts of the underlying appeal relevant herein.

¶ 4    Following a jury trial, defendant was convicted of eight counts of first degree murder in the July 2011 killing of Chevron Alexander, which took place in the parking lot of Dominican Priory Park in River Forest, Illinois. The victim, who was pregnant, was shot

once in the face and three times in the shoulder while sitting in the front passenger seat of a parked car. The State's theory on the case was that codefendant Devin Bickham, Sr. asked his son, codefendant Devin Bickham, Jr., to contract with defendant to murder the victim, who was engaged to codefendant Bickham, Sr., and that the three worked together and carried out that agreement on the night in question. Following his guilty verdict, and due to the jury's additional findings that defendant committed the murder pursuant to contract, agreement or understanding and personally discharged a firearm that proximately caused the death of the victim, defendant was sentenced to 4 concurrent terms of 70 years in prison.[1]

¶ 5        On appeal in our Court, defendant presented several issues for our review, among them, that the trial court erred in failing to conduct a *Krankel* hearing after trial counsel confessed *sua sponte* to the trial court in a posttrial motion to providing ineffective assistance due to her failure to memorialize, in writing, an agreement she had with the prosecutor to present the stipulated direct testimony of a particular witness, Bryan Johnson, at trial. Counsel explained to the trial court that Johnson's testimony would have gone directly to the identification of

---

[1] Codefendants Bickham, Sr. and Bickham, Jr. were tried in simultaneous but severed jury trials, while defendant was tried in a completely separate jury trial from the two. Bickham, Sr. was convicted of two counts of first degree murder with the additional factors that he committed it with a firearm and in a cold, calculated and premeditated manner. He received 2 concurrent terms of 95 years in prison. On appeal, we affirmed his conviction on one count but, due to one-act, one-crime doctrine concerns and upon the State's concession, we vacated the other and corrected his mittimus accordingly, and we necessarily remanded his cause for resentencing, as the trial court improperly confused the available applicable sentencing range. See *People v. Bickham, Sr.*, No. 1-14-2895-U (May 10, 2017) (unpublished order under Supreme Court Rule 23), *modified upon denial of rehearing* (July 19, 2017). On remand, codefendant Bickham, Sr. was resentenced to 70 years in prison. He appealed that sentence, and we affirmed. See *People v. Bickham, Sr.*, No. 1-18-2054-U (December 22, 2020) (unpublished order under Supreme Court Rule 23).

        Codefendant Bickham, Jr. was convicted of two counts of first degree murder with the additional factors that he committed it with a firearm and pursuant to contract, agreement or understanding. He received two concurrent terms of 50 years in prison. On direct appeal, we affirmed his conviction and sentence on one count, but again due to one-act, one-crime doctrine concerns and upon the State's concession, we vacated one of his convictions and modified his mittimus accordingly. See *People v. Bickham, Jr.*, No. 1-14-2894-U (March 22, 20170 (unpublished order under Supreme Court Rule 23). Recently, codefendant Bickham, Jr. again appeared before this Court seeking appeal from the first-stage summary dismissal of his request for *pro se* postconviction relief. We reversed and remanded, finding that his claims were not frivolous or patently without merit, and ordered second stage postconviction proceedings in his cause. See *People v. Bickham, Jr.*, No. 1-18-1883-U (November 17, 2020) (unpublished order under Supreme Court Rule 23).

Bickham, Jr. as the shooter and would have explicitly supported the defense's contention that defendant did not shoot the victim; yet, the prosecutor decided at the last minute not to call Johnson, who had otherwise testified in Bickham, Jr.'s and Bickham, Sr.'s trials, and counsel, who insisted that the parties had agreed that he would testify, had failed to obtain this stipulation in writing or ensure it was binding. The trial court, however, did not conduct any inquiry into this assertion of ineffectiveness because defendant himself did not raise it.

¶ 6    Citing a split in authority between districts as to whether the matter was reviewable since it was defense counsel, rather than defendant *pro se*, who raised the posttrial claim of ineffectiveness, we held, first, that it does not matter how a claim came to be; once it is raised before the trial court, that court cannot simply ignore or fail to address it without considering its merits. We then further held that the trial court was required to conduct some sort of inquiry to satisfy the principles of *Krankel*, which required a determination as to whether defense counsel's alleged error showed possible neglect of defendant's case such that he should be appointed counsel, since the court had failed to do so posttrial in error and in violation of its duties under *Krankel*. Accordingly, we remanded the cause for the limited, and sole, purpose of conducting a hearing on this particular claim, namely, defense counsel's failure to properly secure witness Johnson's testimony. See *People v. Taylor*, 2018 IL App (1st) 150978-U. Additionally, and upon denial of rehearing, we specifically modified our decision to retain jurisdiction over the cause to review, if subsequently called upon by the parties following the ordered *Krankel* hearing on remand, the trial court's determination with respect to the demonstration of possible neglect and the necessity of the appointment of new, *Krankel* counsel. See *People v. Taylor*, 2018 IL App (1st) 150978-U, *modified upon denial of rehearing*.

¶ 7    On remand, defendant and defense counsel again appeared before the trial court. Defense counsel asked the trial court for a continuance to locate and retrieve her trial file; she reported that it was important for her to look at it "for a couple reasons" before making argument, including that she needed a chance to review her notes, investigative reports and materials from the case (which she had tried long ago at this point), so she could convey exactly the content of Johnson's testimony and why it was critical, as well as the precise details of the agreement she had with the prosecutor at that time to secure Johnson's testimony—the two points noted in this Court's remand. The trial court stated that, regardless of her notes on these points, it recalled that Johnson's testimony was the same at both codefendants' trials in that he saw a man in "a white shirt and khaki shorts" standing alone at the front entrance of the parking lot and then run across the street, and that he next heard another man yell that his girlfriend had been shot, but he could not positively identify anyone. The court continued by expressing to counsel that the rest of the record in the matter showed that her representation of defendant was "lengthy, thorough, complete, [and] effective." It therefore concluded:

"I think I have to give you an opportunity to tell me whether or not your notes say something different than common sense would dictate that they could say, that somewhere, some investigator talked to [Johnson] and that he all of a sudden said something that was even more important, at least as far as your position in the case was that it appears it could be. And as much as I don't want to continue it, *** unless [Johnson] was going to say -- and you could show me that [Johnson] was going to say that he saw somebody else doing the shooting -- it would not have changed the outcome of this trial under any set of circumstances in that within minutes of the shooting, [defendant] was found within the car driven by Bickham Junior with the described

clothing on \*\*\* with the murder weapon in the car, with the spontaneous utterance saying, I want my money now, and a gunshot residue on his shirt."

Despite its feelings, however, the trial court allowed defense counsel's motion for a continuance.

¶ 8     When the court reconvened, defense counsel appeared and stated she had found her file on defendant's case. The court asked counsel to reveal what it was that she "expected Johnson to say other than what he said in the other two cases." She informed the trial court that, according to her notes, she would "characterize [Johnson's] testimony a little bit differently" than that which he gave at codefendants' trials. As counsel explained, while Johnson testified at those trials that the shooter, or person he saw in the parking lot closest to the car in which the victim was murdered and then running away from it, was wearing light-colored khaki shorts, defendant, who was pulled over with Bickham, Jr. only moments after the shooting, was actually wearing black shorts; Bickham, Jr. was the one wearing khaki-colored shorts. She concluded, therefore, that Johnson's testimony would have clearly supported the defense's theory on the case that Bickham, Jr., and not defendant, was the shooter.

¶ 9     The trial court responded:

> "Well, I do not have an independent recollection as to what Mr. Bickham was wearing as he was driving the vehicle with he and [defendant] in it immediately after the shooting.
>
>     Mr. Bickham and [defendant] were stopped by the police and placed initially into custody where [defendant] asked for his money for -- immediately for doing the

shooting and that the weapon was recovered and that -- there were other statements by [defendant] as to his participation in here.

So although -- I'm not even sure if that was the case, but I cannot see any difference that would have happened in this trial as a result of [Johnson] testifying." The court went on to state that, regardless of whether counsel had an agreement with the prosecutor that Johnson would testify, it was a "moot point" because while she may have had a right to rely on that agreement, based on what it noted in its colloquy here, "the second prong [of *Strickland*] would not be met." With this, the court denied the *Krankel* motion and concluded the matter, sending it back to our Court per our retained jurisdiction.

¶ 10                                                      ANALYSIS

¶ 11        On appeal, defendant contends that the trial court here committed reversible error during the preliminary *Krankel* hearing by ruling on the merits of his claim of ineffective assistance rather than appointing new counsel in light of defense counsel's possible neglect of the case. He asserts that, pursuant to *Krankel* mandates, the trial court was permitted to determine at this point only whether he established that defense counsel had possibly neglected his cause and, if so, whether new counsel was necessary to argue a claim of ineffectiveness on his behalf. He insists that the trial court here, however, went impermissibly further and evaluated whether his allegation regarding counsel's failure to secure Johnson as a witness established ineffective assistance and, after improperly concluding that it did not, denied his claim. As he explains, since he was not required to prove ineffectiveness at this stage but only possible neglect, and as he did so based on what occurred during this hearing, the trial court was required to appoint *Krankel* counsel and proceed accordingly.

7

¶ 12 We note that in his supplemental brief on appeal, defendant relies heavily on *People v. Roddis*, 2018 IL App (4th) 170605, as well as *People v. Ieliot Jackson*, 2016 IL App (1st) 133741, for his argument. Both of these cases held that a trial court commits reversible error when, during a preliminary *Krankel* inquiry, it considers the legal merits of an ineffectiveness claim, in addition to the factual merits, to find there was no ineffective assistance of trial counsel. See *Roddis*, 2018 IL App (4th) 170605, ¶ 81; *Ieliot Jackson*, 2016 IL App (1st) 133741, ¶ 77 (trial court impermissibly moved directly to the merits of the claim and rejected them as falling short of *Strickland* standards without first attempting to determine whether sufficient facts were alleged to show possible neglect and deciding whether to appoint *Krankel* counsel; this, alone, is reversible error and new *Krankel* hearing is required).

¶ 13 However, subsequent to the filing of his supplemental brief, our state supreme court issued its decision in *People v. Roddis*, 2020 IL 124352, reversing that decision below.[2]

¶ 14 Defendant then moved our Court to cite *Roddis* as additional authority. However, he cited it not for its new holding, which effectively runs counter to his argument on appeal, but for a different reason, which we will discuss in a moment. We allowed defendant's motion. Thereafter, the State filed a response to defendant's motion, arguing that *Roddis* does not stand for the proposition for which he was attempting to use it as support. However, the State also made clear in its response that *Roddis* should nonetheless be considered by our Court, as it directly refutes defendant's primary argument of trial court error and renders his appeal meritless.

---

[2] *Ieliot Jackson* has not been reversed and remains good law. We will discuss this further below.

¶ 15    Normally, we would turn to defendant's and the State's briefs in this cause and address the content of their arguments.  However, we cannot proceed that way here.  To make logical and legal sense of all that is involved, we must first begin with an analysis of *Krankel* and of *Roddis* and how *Roddis* supports, or does not support, the contentions raised by both defendant and the State in light of its recent holding.  We will then go on to explain the ultimate impact of *Roddis* on the particular facts before us in this case.

¶ 16                              *Krankel* Principles

¶ 17    In our prior decision in this cause, we devoted much time to a thorough analysis of *Krankel*, its purpose, and its mandates.  The question raised by defendant here and now involves how *Krankel* is to be navigated.

¶ 18    It is axiomatic that whether the trial court properly conducted a preliminary *Krankel* inquiry to determine if the defendant was entitled to appointment of new counsel during a posttrial hearing on a claim of ineffective assistance is a legal question that we review *de novo*.  See *People v. Jolly*, 2014 IL 117142, ¶ 28; accord *Ieliot Jackson*, 2016 IL App (1st) 133741, ¶ 68.  Of course, new counsel is not automatically required in response to every *Krankel* inquiry.  See *Jolly*, 2014 IL 117142, ¶ 29; *People v. Moore*, 207 Ill. 2d 68, 78 (2003).  However, the trial court, upon the presentation of a posttrial claim of ineffective assistance of trial counsel, has a duty to determine either whether the claim lacks merits and pertains only to trial strategy, or, whether the allegation shows possible neglect of the case by trial counsel.  See *Jolly*, 2014 IL 117142, ¶ 29; *Moore*, 207 Ill. 2d at 78.  In the first instance, new counsel is not required to be appointed, but in the second instance, once possible neglect has been shown, the trial court is to appoint new counsel.  See *Jolly*, 2014 IL 117142, ¶ 29; *Moore*, 207 Ill. 2d at 78.  That new counsel, then, is to represent the defendant at a hearing on

the claim of ineffectiveness, evaluate the claim independently, and argue on the defendant's behalf in place of trial counsel in order to avoid the conflict of interest that trial counsel would experience if she were to have to present the matter and argue against herself. See *Moore*, 207 Ill. 2d at 78. With this independent evaluation, the defendant's claim is fully addressed and the trial court can then make a neutral determination as to whether original counsel was truly ineffective with respect to the instance cited.

¶ 19    That is the path of what is to occur, from preliminary *Krankel* inquiry when a defendant makes the claim to the full address of that claim with new counsel present in an evidentiary hearing once (and if) the defendant shows possible neglect. See *Ieliot Jackson*, 2016 IL App (1st) 133741, ¶ 69. What has become clear over the course of *Krankel*'s development throughout our jurisprudence is this: the threshold upon the defendant on this path is undeniably low. A defendant need not make his ineffectiveness claim in a written motion, nor must he support it with specific facts or examples. See *People v.* Ayers, 2017 IL 120071, ¶¶ 11, 18-19. Instead, to trigger the trial court's duty to properly examine the underlying matters of his claim, a defendant "is not required to do any more than bring his or her claim to the trial court's attention." *People v. Moore*, 207 Ill. 2d at 79; see *People v. Bennie Bobo*, 375 Ill. App. 3d 966, 985 (2015); accord *Ayers*, 2017 IL 120071, ¶ 18 (as long as the claim is clear and asserts ineffective assistance of counsel, this is sufficient to trigger the trial court's duty to conduct a *Krankel* inquiry). Accordingly, a defendant is not required to, at this point, prove that his trial counsel was ineffective, nor must he prove that trial counsel's ineffectiveness affected the outcome of his trial such that reversal or remand is warranted. Rather, all a defendant must do to trigger the trial court's duty of full inquiry—full evidentiary hearing with the appointment of *Krankel* counsel to fully present the

ineffectiveness claim to the trial court in a proceeding—is to assert such a claim and show "possible"—not certain, not sufficient, not even probable—neglect of his case took place. See *Ayers*, 2017 IL 120071, ¶ 18; accord *Ieliot Jackson*, 2016 IL App (1st) 133741, ¶ 77.

¶ 20     Now, that inquiry on the part of the trial court must be " 'adequate' "—" 'inquiry sufficient to determine the factual basis of the defendant's claim.' " *Ayers*, 2017 IL 120071, ¶ 11, quoting *People v. Banks*, 237 Ill. 2d 154, 213 (2010).  Again, if the claim lacks merit or pertains only to matters of trial strategy, the court need not appoint *Krankel* counsel; but, if the allegations show possible neglect of the case, new counsel should be appointed.  See *Ayers*, 2017 IL 120071, ¶ 11; accord *Jolly*, 2014 IL 117142, ¶ 29; *Moore*, 207 Ill. 2d at 78. In making that inquiry, and as we have discussed so many times, the trial court is to implement any one of three methods of interchange between it and the defense to assess what further action, if any, is warranted on the defendant's claim, *i.e.*, if he has shown possible neglect.  See *Ayers*, 2017 IL 120071, ¶ 12; *Moore*, 207 Ill. 2d at 78.  The court may either have a discussion with defense counsel, or it may have a discussion with the defendant himself, or it may rely on its own knowledge of the evidence and the insufficiency (or sufficiency) of defendant's allegations in light of what occurred at trial.  See *Ayers*, 2017 IL 120071, ¶ 12; *Moore*, 207 Ill. 2d at 78-79.  The key here is, whatever method is employed, the inquiry into the allegations of ineffective assistance must be adequate so that the trial court gives full consideration to the defendant's claim.  See *Ayers*, 2017 IL 120071, ¶ 13; *Moore*, 207 Ill. 2d at 78; see also *Banks*, 237 Ill. 2d at 213.  This full consideration of the defendant's claim is the ultimate essence of *Krankel*.  See *Ayers*, 2017 IL 120071, ¶ 13; accord *Jolly*, 2014 IL 117142, ¶ 38; *Ieliot Jackson*, 2016 IL app (1st) 133741, ¶ 69 ("[t]he procedure developed in *Krankel* is intended to fully address a defendant's *pro se* posttrial

claims of ineffective assistance of trial counsel at the trial level, which would serve to potentially limit issues on appeal, or, if such issues are raised on appeal, would provide a sufficient record for the reviewing court to consider those claims").

¶ 21       These legal principles have not changed, pre- or post-*Roddis*.

¶ 22       However, as the State points out, defendant's argument here is that the trial court jumped the gun, essentially, by going beyond a consideration of the facts he presented during the preliminary *Krankel* inquiry to also consider the legal merits of his claim of ineffectiveness and finding that, regardless of any possible neglect demonstrated, defendant's claims did not meet the *Strickland* prejudice prong. Defendant does not dispute this, and even a summary glance at his supplemental brief reveals that this is exactly what he argues. Unfortunately for him, the supreme court's decision in *Roddis* has rendered this precise argument no longer applicable or germane for review.

¶ 23                    Supreme Court Decision in *Roddis*

¶ 24       Following his conviction for aggravated domestic battery, the defendant in *Roddis* filed a *pro se* motion alleging, in part, ineffective assistance of trial counsel, but the trial court denied the motion as untimely. On appeal, the reviewing court affirmed the conviction but remanded for a hearing on the defendant's claims of ineffective assistance in compliance with *Krankel*. See *Roddis*, 2020 IL 124352, ¶¶ 16-17.

¶ 25       On remand, the trial court held a pre-*Krankel* inquiry with the defendant and his trial counsel present regarding the claims of ineffectiveness the defendant had raised. The court explained that if his allegations were denied, it would move onto other issues, but if it concluded that the allegations had possible merit, it would appoint separate counsel and conduct a " 'full-blown *Krankel* hearing.' " *Roddis*, 2020 IL 124352, ¶ 22. During the

inquiry, the defendant insisted that his counsel had been ineffective because he failed to impeach the complaining witness with her text messages indicating the incident was an accident and that he had been tricked into waiving his right to a jury trial because counsel told him he knew the judge personally and could get his charges reduced. Counsel rebutted the defendant's allegations by explaining that once he got the complaining witness to testify on the record that she believed it was all an "accident" and that the defendant did not knowingly harm her, there was nothing to impeach her on. Counsel also denied that he ever made any representation that he knew the trial judge personally. Upon the conclusion of the preliminary *Krankel* inquiry, the trial court determined that the defendant's allegations did not amount to ineffective assistance and, thus, a full-blown *Krankel* hearing with the appointment of additional counsel to argue ineffectiveness was not necessary. See *Roddis*, 2020 IL 124352, ¶¶ 23-26.

¶ 26    The defendant appealed again, arguing, exactly as defendant does here, that the trial court erred by addressing the final, legal merits of his ineffectiveness claim instead of determining whether he had shown possible neglect and appointing new counsel to address the factual merits going forward. The reviewing court agreed, finding that it was improper for the trial court to reach the legal merits of an ineffectiveness claim in a *Krankel* hearing, as it was only supposed to determine whether it is appropriate to appoint new counsel to investigate the factual claims once possible neglect has first been demonstrated by the defendant. See *Roddis*, 2020 IL 124352, ¶ 28. Accordingly, the reviewing court reversed and remanded with directions to appoint new counsel. See *Roddis*, 2020 IL 124352, ¶ 29 (citing *Roddis*, 2018 IL App (4th) 170605).

¶ 27    Upon the grant of the State's petition for leave to appeal, the supreme court clarified that the question at issue was whether, upon a defendant's *pro se* posttrial allegation of ineffective assistance of counsel triggering the trial court's duty to conduct a *Krankel* inquiry, the court may properly consider *both* the factual *and* legal merits of the claim in its determination whether to appoint the defendant new counsel, as the State argued, or whether it was bound to consider only the factual merits to first find possible neglect, as the defendant maintained. See *Roddis*, 2020 IL 124352, ¶ 31. Again, this is exactly the argument with which we are presented. The supreme court in *Roddis* sided with the State and held that courts may properly consider both the factual and legal meris of a defendant's ineffective assistance claim during a preliminary *Krankel* inquiry. In so doing, it noted that the oft-quoted language from *Moore* that a trial court need not appoint counsel if the defendant's claim "lacks merit" has never been interpreted by the supreme court as distinguishing between factual and legal merit. See *Roddis*, 2020 IL 124352, ¶¶ 50, 54-55 (*Moore* holds only that the trial court is to *first* examine the factual basis of the claim, not that it is to *only* examine the facts; it simply provided a minimum threshold for the court's *Krankel* consideration (the facts), not a limit to what it can consider (legal merits, as well)). The *Roddis* court reiterated that, at a *Krankel* hearing, a trial court may base its determination of the merits of a defendant's ineffectiveness claims on its own knowledge of counsel's trial performance and emphasized that the trial court, as most familiar with the proceedings at issue, remains best situated to serve the interests of judicial economy by extinguishing conclusory claims. See *Roddis*, 2020 IL 124352, ¶ 56. Accordingly, the supreme court concluded that, "even in preliminary *Krankel* inquiries, a trial court must be able to consider the merits *in their entirety* when determining whether to appoint new counsel on a *pro se*

14

posttrial claim of ineffective assistance of counsel" (emphasis in original), and that this means the consideration of both the factual and legal merits presented. *Roddis*, 2020 IL 124352, ¶ 61. Clearly, *Roddis* has effectively changed the law to expand what a trial court may consider during a preliminary *Krankel* inquiry.

¶ 28                    Defendant's Reliance on *Roddis*

¶ 29    As a complete aside, but as a matter of record, we note that, while this case was on remand, and during the preliminary *Krankel* inquiry, defense counsel told the trial court that defendant, himself, had prepared his own *pro se Krankel* motion. This motion was in addition to the one defense counsel made *sua sponte* long before and which had triggered this original appeal (and our remand). Counsel asked the court to allow defendant to file it. The trial court opined that this would be inappropriate due to the unique procedural posture of this case. Eventually, the court allowed defendant to file his *pro se Krankel* motion, but did not consider it in any way.

¶ 30    Now, defendant, who, again, was the first to bring *Roddis* to our attention in his motion to cite additional authority, cited that decision to claim that, because the supreme court emphasized that a trial court should consider "the merits *in their entirety*" when determining whether to appoint *Krankel* counsel, the trial court here should have considered his newly written *pro se Krankel* motion, in addition to defense counsel's *sua sponte* original motion.

¶ 31    Defendant, however, completely misreads *Roddis* in this regard. This was not the situation presented in *Roddis* and this is not what our supreme court meant by its holding. *Roddis* spoke directly to the consideration of both the factual merits and the legal merits of a *Krankel* claim and inherently changed the law to state that now, both of these—and not just factual merits surrounding the claim—may be considered. In other words, a trial court can

properly review the facts and then proceed directly to the legal merits and consider both in its determination of whether the appointment of counsel is necessary. It did not, nor was it presented with, the situation defendant says it applies to here, where a defendant seeks consideration of his own *Krankel* motion after one has already been filed on his behalf. In that regard, and contrary to defendant's insistence, we find that the trial court properly refused to consider his *pro se Krankel* motion, based on the particular facts at hand.

¶ 32    First, as we have said, defense counsel already raised the motion *sua sponte*, but nonetheless on defendant's behalf, and cited the situation surrounding the procurement of Johnson's testimony. We remanded his case for consideration on the content of that motion, only and specifically; our mandate was clear. And, that is the basis for the instant appeal. To hold otherwise now and permit the consideration of defendant's new *Krankel* motion in addition to the one filed by defense counsel that started the whole trajectory of this cause effectively would allow defendant to throw open the doors to any *Krankel* issue and have even more bites at the apple after we specifically limited our prior holding to the situation with Johnson. Moreover, and apart from that, upon our review of the record, we note that defendant's *pro se Krankel* motion, the very one he sought to introduce, actually deals only with trial counsel's failure to secure Johnson's testimony—which is exactly what we are addressing herein. Defendant writes nothing more in his *pro se* motion other than the same claim regarding the procurement of Johnson's testimony that we, the State, and defense counsel, have been discussing all along. As such, not only does *Roddis* not help defendant in his effort to have this second *Krankel* motion considered, he does not present anything more in that motion than what is already at issue here. Accordingly, we need not review this point further, other than to say his *pro se Krankel* motion has no place in this cause.

¶ 33                          The State's Reliance on *Roddis*

¶ 34        Returning to the holding of *Roddis*, the State obviously jumped on the change it has made

in our law, as well as on defendant's supplemental citation to that case. In its response to

defendant's motion to cite it as additional authority in our Court regarding the instant appeal,

the State insisted that *Roddis*' holding affirms that the trial court properly considered both the

factual and legal meris of defendant's ineffectiveness claim regarding Johnson and, thus,

negates any suggestion that the trial court exceeded its authority during the preliminary

*Krankel* inquiry on remand by considering both the factual and legal merits to find that

defendant's claim ultimately failed under *Strickland*. *Roddis* ties our hands here and we have

to agree with the State in this regard. Defendant's argument that the trial court erred by

prematurely considering the legal merits of his claim on ineffectiveness during the

preliminary *Krankel* inquiry we ordered on remand—although it was made in good faith at

the time of the filing of his supplemental brief here, predating *Roddis*—is no longer

applicable in light of *Roddis*' holding.

¶ 35        However, our discussion of this matter does not end there.

¶ 36                   *Roddis* Still Subjects the Trial Court to Review

¶ 37        *Roddis* clarified *Krankel*'s application to expressly broadened what the trial court

may consider in determining whether new counsel should be appointed at a preliminary

*Krankel* hearing. As noted, by "merits," the supreme court meant that the trial court is to

consider the merits of a defendant's ineffectiveness claim "in their entirety," and that this

encompassed both the allegations' factual and legal merits.

¶ 38        However, what *Roddis* did not do is that it did not remove the standards by which a trial

court must abide when it considers both the factual and legal merits of an ineffectiveness

17

claim at a preliminary *Krankel* hearing. That is, while it is true now that a trial court can consider both and cannot be said to have "jumped the gun" or have committed error by considering the legal merits in addition to the factual merits, it still must make that consideration properly and adequately so that the legal principles of *Krankel* are met. As we discussed earlier, *Roddis* does not remove the legal principle that, if the defendant shows possible neglect by defense counsel, he is to be appointed new counsel and a full *Krankel* hearing is to be held. See *Ayers*, 2017 IL 120071, ¶ 11; accord *Jolly*, 2014 IL 117142, ¶ 29; *Moore*, 207 Ill. 2d at 78. It does not remove the necessity for sufficient inquiry on the part of the trial court. See *Ayers*, 2017 IL 120071, ¶ 11; accord *Jolly*, 2014 IL 117142, ¶ 29; *Moore*, 207 Ill. 2d at 78. It does not remove the necessity for the trial court's employment of one of the three methods of interchange (with defendant, with defense counsel, or using its own recollection) to adequately assess the allegation of ineffectiveness in light of what occurred at trial. See *Ayers*, 2017 IL 120071, ¶ 12; *Moore*, 207 Ill. 2d at 78. And, it does not remove the legal principle that, whatever method the trial court employs, the inquiry into the allegations of ineffective assistance must be adequate so that the trial court gives full consideration to the defendant's claim. See *Ayers*, 2017 IL 120071, ¶ 13; *Moore*, 207 Ill. 2d at 78; see also *Banks*, 237 Ill. 2d at 213. In other words, *Roddis* did not change that the full consideration of the defendant's claim is the ultimate essence of *Krankel*. See *Ayers*, 2017 IL 120071, ¶ 13; accord *Jolly*, 2014 IL 117142, ¶ 38; *Ieliot Jackson*, 2016 IL App (1st) 133741, ¶ 69.

¶ 39     All this is true because *Roddis* itself, and its progeny, so indicate.

¶ 40     First, we note that our supreme court, at the outset of its decision in *Roddis*, cited the same legal principles we have just cited here. See *Roddis*, 2020 IL 124352, ¶¶ 33-36. Accordingly, *Roddis*, even though it changed what the trial court may consider in a

18

preliminary *Krankel* inquiry, reaffirmed *Krankel*'s basic legal concepts. See *Roddis*, 2020 IL 124352, ¶¶ 33-36. Our supreme court, then, in no way changed the underlying tenants of *Krankel*.

¶ 41   Second, and more important, after announcing the change, namely, that both factual and legal merits may now be taken into account by a trial court during a preliminary *Krankel* inquiry, the *Roddis* court did not end its decision. Rather, it went back and reviewed, pursuant to the same legal *Krankel* principles it cited and which we have once again reaffirmed here, whether the trial court in that case properly considered the merits, both factual and legal, when it denied the defendant's *pro se* posttrial claim of ineffective assistance of counsel. See *Roddis*, 2020 IL 124352, ¶¶ 65-68. That review consisted of an examination of the record with regard to how the trial court conducted the *Krankel* inquiry into the allegations of ineffectiveness and whether the inquiry was adequate. See *Roddis*, 2020 IL 124352, ¶ 66. The *Roddis* court looked directly at the transcript of that hearing and it reviewed the trial court's conclusion that the defendant's claims were either matters of trial strategy or, as some of them centered on witness credibility, were unfounded in light of the evidence presented. See *Roddis*, 2020 IL 124352, ¶¶ 66-68. Ultimately, the *Roddis* court stated that, pursuant to its "scrutiny of the record," the trial court had properly determined that the defendant received effective assistance of counsel and was not prejudiced by his counsel's performance. *Roddis*, 2020 IL 124352, ¶ 68. This is key here, because it was only after this review of the trial court's holding in light of the record at hand that the *Roddis* court affirmed that the trial court rightfully operated within its discretion to decline to appoint *Krankel* counsel to address the defendant's *pro se* posttrial claims of ineffectiveness. See *Roddis*, 2020 IL 124352, ¶ 68.

¶ 42    Also significant are the decisions that have come since. Although they are not many in number due to the recentness of *Roddis*, they are nonetheless clear in the fact that an evaluation of the trial court's decision to deny *Krankel* counsel is still, regardless of *Roddis*' primary holding, required.

¶ 43    For example, in *People v. Aaron Jackson*, 2020 IL 124112, ¶ 98, our supreme court clarified its holding in *Roddis* regarding *Krankel* procedures by writing the following:

> "Whether the trial court properly conducted a *Krankel* preliminary inquiry presents a legal question that we review *de novo*. [Citations.] However, if the trial court has properly conducted a *Krankel* inquiry and has reached a determination on the merits of the defendant's *Krankel* motion, we will reverse only if the trial court's action was manifestly erroneous."

Thus, after reaffirming the trial court's ability to now consider both the factual and legal merits of an ineffectiveness claim at a preliminary *Krankel* hearing, our supreme court also reaffirmed that a manifest-error standard still applies to a review of the propriety of the trial court's decision to deny the appointment of *Krankel* counsel following that consideration. See *Aaron Jackson*, 2020 IL 124112, ¶ 98 (stating that the "operative concern for the reviewing court" is still "whether the trial court conducted an adequate inquiry into the defendant's *pro se* allegations of ineffectiveness pursuant to a manifestly erroneous standard, which requires review of the trial court's determination and if the allegations show possible neglect, requiring appointment of *Krankel* counsel). Particularly in *Aaron Jackson*, even though it affirmed the trial court's decision not to grant *Krankel* counsel, the supreme court did so, as it had in *Roddis*, only after examining the record, the merits of the defendant's contentions of ineffectiveness, what the trial court considered, and how the trial court

conducted the preliminary *Krankel* inquiry. See *Aaron Jackson*, 2020 IL 124112, ¶¶ 108-22; see also *People v. Quentin Bobo*, 2020 IL App (1st) 182628, ¶¶ 37-40 (holding that trial court's denial of appointment of *Krankel* counsel was appropriate *but only after* it examined the record and determined that "[t]he record shows that the trial court made a significant effort to explore [the] defendant's claim regarding" ineffectiveness of his trial counsel "and gave [him] ample opportunity to present the factual basis of his claim"); *People v. Neal*, 2020 IL App (4th) 170869, ¶¶ 207-09 (holding that how the trial court conducted the preliminary *Krankel* inquiry in that case and its findings were appropriate *but only after* first examining the record of that hearing to dissect what the trial court relied on, said, and used as a basis for its decision to deny appointment of *Krankel* counsel).

¶ 44    Moreover, several other cases that have been forced to implement *Roddis* and disregard a defendant's contention that the trial court improperly considered the legal merits of an ineffectiveness claim during a preliminary *Krankel* inquiry have actually gone on to find that, pursuant to a review of the record, the trial court's denial of the appointment of *Krankel* counsel was, in fact, and nonetheless, manifestly erroneous. Chief among these is *People v. Alexander*, 2020 IL App (3d) 170829. There, the defendant filed a posttrial *pro se Krankel* motion asserting ineffective assistance of trial counsel due to counsel's failure to investigate a recorded jail call in which another person confessed to the crime and for failing to object to the admission of a video recording of the victim at the hospital. See *Alexander*, 2020 IL App (3d) 170829, ¶ 22. The trial court denied it. Recognizing that *Roddis* provided new law, the *Alexander* court declared that it was appropriate for the trial court to consider both the legal merits and factual basis for the claims. See *Alexander*, 2020 IL App (3d) 170829, ¶ 24.

However, it went on to stated that the trial court's denial must still be reviewed for manifest error. See *Alexander*, 2020 IL App (3d) 170829, ¶ 25.

¶ 45    Upon that review, the *Alexander* court found that "manifest error occurred when the trial court determined that [the] defendant did not show possible neglect of the case," because it was not clear on the face of his allegation or from counsel's statements at the *Krankel* inquiry that his claims lacked merit or were part of trial strategy. The *Alexander* court noted how important a record of another individual confessing to the offense would have been to the defense's theory of the case and how little probative value (and much prejudice) the hospital video had in this matter. See *Alexander*, 2020 IL App (3d) 170829, ¶¶ 26-32 (there was no possible logical trial strategy to justify defense counsel's treatment of these matters). Accordingly, the *Alexander* court remanded the matter for the appointment of counsel and further posttrial proceedings pursuant to *Krankel*. See *Alexander*, 2020 IL App (3d) 170829, ¶ 33 (finding manifest error in trial court's denial of *Krankel* motion and remanding for the appointment of *Krankel* counsel to assist the defendant in advancing his *pro se* claims of ineffectiveness). See also *People v. Abuharba*, 2020 IL App (5th) 170073-U, ¶¶ 54, 55-58 (the defendant's argument that the trial court erred in considering legal merits during preliminary *Krankel* inquiry, though made in good faith at the time of filing, was no longer germane due to *Roddis*; however, because there was "insufficient information in the record to support that the trial court considered [the] defendant's *pro se* posttrial claim regarding [ineffectiveness] in its entirety at the preliminary *Krankel* inquiry," there was manifest error in light of the defendant's showing of possible neglect, which required remand to the trial court for the appointment of *Krankel* counsel and a full *Krankel* evidentiary hearing); *People v. Jenkins*, 2020 IL App (4th) 170611-U, ¶¶ 36-39 (*Roddis* allows trial court to consider

merits in their entirety at preliminary *Krankel* inquiry, but the trial court must do properly, which means it must remain impartial and fair, not act as an advocate, and conduct an examination that is not "argumentative or hostile;" remand for *Krankel* counsel and full *Krankel* hearing was required because there were clear factual disputes related to the defendant's ineffectiveness claims that the trial court did not investigate and which it could have easily examined by turning to the record instead of holding an argumentative hearing).[3]

¶ 46    Additionally, we are also mindful of, and cannot ignore, *People v. Ieliot Jackson*, 2016 IL App (1st) 133741, which defendant cites in his supplemental brief on appeal and which we mentioned at the outset of our decision herein.  Although defendant cited this case to assert impropriety on the part of the trial court for considering the legal merits of his ineffectiveness claim at the preliminary *Krankel* inquiry, and although *Ieliot Jackson* predates *Roddis*, it has not been overruled and remains good law.  And, even apart from the portion of *Ieliot Jackson* that is now contrary to *Roddis*, we still find that case to be instructive here.

¶ 47    Following trial in *Ieliot Jackson*, the defendant presented several claims of ineffective assistance of defense counsel, including, similar to the instant cause, counsel's failure to introduce testimony from a particular witness that went directly to his theory on the case.  At the preliminary *Krankel* inquiry, and as the defendant was explaining the importance of this witness, he pointed out that defense counsel's insistence that the witness could not be located (as that was why he was not called) was untrue, since the witness was incarcerated.  Immediately, the trial court interjected and insisted, without conferring with the record, that the evidence indicated the witness had been in custody with defendant and this was probably why he was not called (*i.e.*, as a matter of trial strategy based on credibility).  See *Ieliot*

---

[3] We recognize that *Abuharba* and *Jenkins* are unpublished orders; however, we cite them as examples rather than as precedential authority.  See, *e.g.*, *Pekin Insurance Co. v. Centex Homes*, 2017 IL App (1st) 153601, ¶ 55.

*Jackson*, 2016 IL App (1st) 133741, ¶ 71. The defendant replied that this was not so, that the witness had never been incarcerated with him, and that such a conclusion had never been stated throughout any of these proceedings; the court, however, dismissed the defendant's assertion and insisted again that the witness had been so incarcerated with the defendant "at the time." *Ieliot Jackson*, 2016 IL App (1st) 133741, ¶ 71. Ultimately, at the conclusion of the preliminary *Krankel* hearing, the trial court denied the defendant's motion and refused to appoint counsel, finding, just as the trial court in the instant cause, that his claims did not rise to the level of ineffective assistance under *Strickland* because defense counsel's performance in the case was proper and not ineffective. See *Ieliot Jackson*, 2016 IL App (1st) 133741, ¶ 73.

¶ 48     The defendant appealed, claiming, just as defendant in the instant cause, that the trial court did not first consider the claim for possible neglect and then decide whether to appoint independent counsel but, instead, proceeded directly to the legal merits and ruled that he failed to establish a *Strickland* claim. See *Ieliot Jackson*, 2016 IL App (1st) 133741, ¶ 75. Upon our review, we agreed with the defendant and remanded the matter for a new preliminary *Krankel* hearing. See *Ieliot Jackson*, 2016 IL App (1st) 133741, ¶ 77. Clearly, that holding is incorrect now in light of *Roddis*.

¶ 49     However, and the reason we believe *Ieliot Jackson* has not been explicitly overruled by *Roddis*, is that there was a secondary basis for our decision to remand for a new preliminary *Krankel* hearing, one that cannot be struck down. Apart from any *Roddis* concerns, our court went further to examine the record before it. Upon that examination, we found that the trial court did not properly conduct the preliminary *Krankel* inquiry because it improperly considered evidence beyond the record. The record in the case did not support the fact that

24

the witness at issue, and who was purportedly willing to confess to the crime, had been incarcerated with defendant at any time, as the trial court insisted. In fact, this information was nowhere in the record. See *Ieliot Jackson*, 2016 IL App (1st) 133741, ¶ 71. Yet, the trial court mistakenly inferred this fact and then used it to determine that defendant's claim of ineffectiveness for defense counsel's failure to call the witness—which would have gone directly to his defense—was meritless because it was based on trial strategy (*i.e.*, not calling him as a witness since he had been incarcerated with the defendant, which would affect his credibility). This was the reason that the trial court found the appointment of *Krankel* counsel unnecessary. However, this was a presumption on the part of the trial court, the truth of which was unknown to it. The court did not take the time to verify its veracity; had it looked at the record before relying on it to make its decision as to the sufficiency of the defendant's claim of ineffectiveness, it would have realized it was not a matter ever supported by the record. Thus, we held that it was error for the trial court to have relied on extraneous, and mistaken, information during the preliminary *Krankel* inquiry and that a new inquiry was required for this reason, as well. See *Ieliot Jackson*, 2016 IL App (1st) 133741, ¶ 78, citing *Jolly*, 2014 IL 117142, ¶ 36 (error to rely on matters outside the record in evaluating the defendant's claims during preliminary *Krankel* inquiry). Again, *Ieliot Jackson* remains good law.

¶ 50      Accordingly, based on all these post-*Roddis* decisions, it is clear to us that in the instant cause, despite the fact that we cannot entertain defendant's claim regarding the propriety of the trial court's consideration at his preliminary *Krankel* hearing of the legal merits of his claim in addition to the factual merits, we are still permitted to—and must—conduct a review of the propriety of the trial court's ultimate decision to deny him the appointment of *Krankel*

counsel and of how it reached its determination that he had not shown possible neglect on the part of defense counsel for failing to secure Johnson's testimony.

¶ 51                              Preliminary *Krankel* Inquiry Review pursuant to Manifest Error Standard

¶ 52      Returning, then, to the principles of *Krankel*, which we cited at the outset of our decision, we are mindful that we proceed via *de novo* review to determine if there was manifest error in the trial court's conclusion here that defendant did not show possible neglect and in denying the appointment of *Krankel* counsel. Manifest error is error that is clearly evident, plain, and indisputable. See *Aaron Jackson*, 2020 IL 124112, ¶ 98. Based on the record before us, there was.

¶ 53      Again, defendant was simply required to bring forth his claim of ineffective assistance of defense counsel, not prove it at this point. This triggers the trial court's duty to hold a preliminary *Krankel* hearing, which is to operate as a neutral and nonadversarial proceeding, with the trial court serving as a neutral trier of fact to initially evaluate the ineffectiveness claim. This evaluation requires some type of inquiry, which must be adequate to sufficiently determine possible neglect and which involves an interchange with the defendant, or an interchange with defense counsel, or the court's reliance on its knowledge of counsel's performance at trial and the sufficiency of the defendant's allegation to assess what further action, if any, is warranted on a defendant's claim. See *Ayers*, 2017 IL 120071, ¶ 20; *Jolly*, 2014 IL 117142, ¶ 28; *Moore*, 207 Ill. 2d at 77-78. The defendant is to be afforded the opportunity to flesh out his claim so the court can determine if appointment of new counsel is necessary. It must be remembered that, at this stage of the proceedings, he is attempting to represent himself without counsel in order to obtain counsel; this proceeding must be fair.

¶ 54      The problem in the instant cause is no longer the *Roddis* issue. It is that the preliminary *Krankel* hearing conducted by the trial court here, along with its decision to deny the appointment of *Krankel* counsel, was manifestly erroneous in light of the record before us.

¶ 55      Yes, perfunctorily, the trial court had the required interchange pursuant to *Krankel* caselaw. The record shows it actually used not one, but two, methods: it had a discussion with defense counsel and it relied on its own knowledge of the trial evidence to determine the sufficiency of defendant's claim. However, substantively, the content of these interchanges was not only suspect but void of any true, meaningful consideration on the part of the trial court with respect to defendant's claim of ineffective assistance when it came to securing Johnson's testimony. And, at some points, the content of the interchanges reveals that the facts the trial court chose to consider were in direct contradiction to the facts and evidence presented in the record during defendant's trial. Accordingly, because the trial court's inquiry into the allegations of ineffective assistance was not adequate so that it gave full consideration to defendant's claim here, we cannot say that a proper preliminary hearing took place within the guidelines of *Krankel* and pursuant to our order on remand.

¶ 56      Our first concern is that the trial court completely dismissed defense counsel's arguments without any serious consideration. These arguments neither lacked merit nor were simply matters of trial strategy; rather, they went directly to the evidence presented in this cause and defendant's theory of the case. At the outset of the hearing upon remand, the trial court stated that, regardless of whatever counsel's recollection was or what was in her notes, it recalled Johnson having testified at both codefendants' trials that, although he could not provide a positive identification, the man he saw running across the parking lot at the same time he heard another man yell his girlfriend had been shot—*i.e.*, the shooter—was wearing

27

light colored, khaki shorts. The court told defense counsel that, if her *sua sponte* claim of ineffectiveness for failing to secure Johnson's testimony had any merit, she would have to show that Johnson "all of a sudden said something that was even more important, at least as far as your position in the case was that it appears it could be." Yet, this is exactly what counsel did. As she explained after she retrieved her notes, Johnson's testimony that the shooter wore khaki shorts was critical to defendant's cause because when he was pulled over by police with codefendant Bickham, Jr. only moments after the shooting, defendant was wearing black shorts. That defendant was wearing black shorts is confirmed in the record of defendant's trial. The police officer who performed the custodial stop by curbing Bickham, Jr.'s car and removing both occupants from inside—again, only mere minutes after the shooting—testified directly as to what each was wearing. He specifically stated, on record, that defendant was wearing black shorts and Bickham, Jr. was wearing khaki shorts.

¶ 57 From this trial evidence, counsel pointed out to the court that Johnson's testimony was crucial to the defense, as it would have clearly supported the defense's primary theory on the case that Bickham, Jr., and not defendant, was the shooter. The trial court, however, did not accept this argument, stating that it did "not have an independent recollection as to what Mr. Bickham was wearing as he was driving the vehicle with he and [defendant] in it immediately after the shooting." We find this to be incredibly dismissive and incredulously disingenuous on the part of the trial court. Apparently, the court found it to be permissible to reach back in its memory to testimony from codefendants' trials (extraneous sources) to initially presume what Johnson's testimony would have been in defendant's trial had he testified (and had his testimony been properly secured by defense counsel for this to happen) that the shooter was wearing khaki-colored shorts, as it stated before counsel retrieved her

notes. But later, after the continuance, the court found it seemingly was not worth its time or effort to look back into the very trial record of defendant's case before it to verify the testimony presented by the police officer that defendant was wearing black shorts and Bickham, Jr. was wearing khaki shorts. Moreover, while the trial court unapologetically admitted that it had no "independent recollection" as to what codefendant or defendant were wearing, it then simply concluded this was all irrelevant anyway. Yet, in our view, the presentation of such evidence and the efforts defense counsel used (or failed to use) to secure this evidence cannot be said to be matters of trial strategy. Instead, this went directly to identification concerns and defendant's theory on the case. Clearly, not only did the court dismiss counsel's argument about the importance of Johnson's testimony without any valid consideration rendering this method of *Krankel* inquiry baseless, but its reliance on its own knowledge of the evidence to determine that defendant's allegations were insufficient in light of what occurred at trial was blatantly flawed, since the court itself actually admitted it had no recollection of the precise testimony involving the ineffectiveness claim raised.

¶ 58     What is more, the "personal knowledge" the court eventually did rely on was in direct contradiction to the record. In fact, the court misrepresented the record and then used that incorrect information as the basis for its conclusion that counsel's argument about having Johnson testify as to the color of the shooter's shorts ultimately did not matter. After admitting it did not recall what codefendant was wearing, the court concluded that Johnson's testimony in this regard would not have mattered because, as it recalled, when codefendant Bickham, Jr. and defendant were stopped by police and removed from the vehicle, defendant "asked for his money for – immediately for doing the shooting," that the weapon was recovered in the car, and that defendant later made statements of participation to police. It

then admitted that it was "not even sure if that was the case, but," regardless, with this additional evidence, Johnson's testimony would not have affected the outcome of the trial.

¶ 59    While the trial court was correct that additional evidence showed the murder weapon was recovered from Bickham, Jr.'s car, the evidence did not show that defendant asked for money *for the shooting*. Rather, again, we find another instance where the trial court admitted it did not know what the evidence was. In direct contradiction to the trial court's mischaracterization, the evidence was consistent in all three trials—codefendant Bickham, Jr.'s, codefendant Bickham, Sr.'s, and defendant's—and given by the same police officer, that when Bickham, Jr. and defendant were pulled from the car by police, defendant looked at Bickham, Jr. and said he wanted his money now, and nothing more. Defendant never stated, and no one ever testified defendant stated, that the money was for the murder. Contrary to the trial court's recollection of the testimony, then, it did not definitively establish that defendant asked for money owed to him for the shooting, or even related to it. The trial court inferred such a conclusion which was a mistake, stated it was part of the evidence presented which it was not, and then used that mistaken inference—even after admitting for a second time that it was "not sure" that such evidence was even true—to find that Johnson's testimony regarding the color of the shooter's shorts was irrelevant precisely in light of this fact's existence, which was demonstrably untrue. Again, the trial court did not bother to verify the veracity of the evidence it used here. The errors on the part of the trial court during defendant's preliminary *Krankel* hearing are clearly evident, plain, and indisputable.

¶ 60    Would these instances cited, as evidenced in the record and along with the inclusion of Johnson's testimony (had it been properly secured by counsel), have made a difference in the

outcome of defendant's jury trial and supported a finding that counsel's failure to secure Johnson's testimony amounted to ineffective assistance of counsel so as to require reversal or remand of his conviction? That is not for us, at this time, to say. The essence of the error here is that the record shows defendant demonstrated possible neglect and, accordingly, the trial court had a duty to appoint *Krankel* counsel to help defendant flesh out his claim of ineffectiveness surrounding defense counsel's failure to secure Johnson's testimony at trial. The trial court's behavior was neither impartial nor neutral, and this preliminary inquiry was hardly fair to defendant. Rather, and in light of the record, it was manifestly erroneous.

¶ 61    The State argues that this particular defendant did not need new counsel to be appointed to litigate his claim since "no awkward conflict exist[ed] because this ineffective assistance of counsel allegation came directly from trial counsel, not defendant which indicates that she was more than willing to argue her own incompetency." This statement is incredulous in light of the procedural posture of this case. The essence of our prior holding in this cause made clear that it does not matter who raises a *Krankel* question of ineffectiveness, be it defendant or his counsel. This is what we devoted our entire analysis to: a *Krankel* claim is a *Krankel* claim regardless of who brings it to the trial court's attention; once it is brought, by whatever means, it deserves to be heard according to *Krankel* principles, which mandate that a showing of possible neglect requires the appointment of new counsel. That the State now argues none of this should matter here because defense counsel rather than defendant raised the issue flies directly in the face of our prior holding. Again, the *Krankel* concerns remain the same. We cannot expect defense counsel to argue her own ineffectiveness, which otherwise places her own interests at odds with those of her client.

31

¶ 62        Instead, *Krankel* counsel would not have the fear of being found ineffective. This counsel would independently evaluate defendant's claim and avoid the conflict of interest that defense counsel would otherwise have in trying to justify her own actions contrary to defendant's position during a full *Krankel* hearing. This counsel would also, undoubtedly, and particularly in this case which references three criminal trials in relation to the testimony at issue in the ineffectiveness claim, pursue different avenues to advocate on defendant's behalf. For example, this could include reinterviewing witness Johnson. *Krankel* counsel would almost certainly also review the evidence the court misconstrued here, including what exactly defendant said upon exiting the car, the testimony of the police officer who testified to his statement and to the color of his and Bickham, Jr.'s shorts, the testimony provided at codefendants' trials in this regard, whether an agreement existed between defense counsel and the State about presenting Johnson's testimony at defendant's trial, what that agreement entailed and whether it was sufficiently preserved or memorialized by defense counsel, and any other deficiencies of defense counsel's representation of defendant with respect to all this. *Krankel* counsel would then be able to present this information in a cogent, coherent and effective argument on defendant's behalf to demonstrate to the trial court why defense counsel's neglect in securing Johnson's testimony amounted to ineffective assistance of counsel. Only with this representation of defendant by *Krankel* counsel, and with a review of the correct evidence presented at trial, would *Krankel* concerns be fully, and properly, addressed by the trial court here.

¶ 63        Defendant's claim of ineffective assistance based on defense counsel's failure to secure Johnson's testimony, along with the trial court's own admissions that it was unsure as to the evidence presented directly related to that claim, was, in our opinion, sufficient to place the

court on notice that there was a need for the appointment of *Krankel* counsel to independently investigate the claim and represent defendant at a separate hearing. Rather than doing so, the trial court rested its decision on information it was admittedly unsure about, information that was not in the record, and information that was demonstrably wrong.

¶ 64     Granted, many ineffective assistance claims are, on their face, either so contrary to the record or so obviously illogical. However, some are genuinely more involved, have some level of support in the record, or are not directly contradicted by defense counsel. While trial courts undoubtedly must evaluate the factual and legal bases to determine the difference, *Roddis* has left an important question unresolved: how far should a trial court go in doing so, based on these two instances? In the former, we suppose any trial court should be able to easily decide whether *Krankel* counsel is necessary during a preliminary inquiry, just as in *Roddis*. But, in the latter, what is the trial court to do? We cannot expect a defendant to adequately present his claims without the assistance of counsel; yet, that seems to be what we are asking him to do, at least to some degree, in order just to obtain counsel to then make the argument for him.[4]

¶ 65     Ultimately, here, we hold that, once the trial court realized it was unsure with respect to the factual disputes surrounding defendant's allegation of ineffective assistance of defense counsel in securing the testimony of Johnson, which was relevant and went directly to his theory on the case, the decision should have been made to appoint *Krankel* counsel to defendant for the independent investigation and presentation of his claim during a full

---

[4] This dilemma was directly, and aptly, posed by the *Jenkins* court and addressed to our supreme court, post-*Roddis*; albeit an unpublished decision, we adopt the same concern, and give credit where credit is due. See *Jenkins*, 2020 IL App (4th) 170611-U, ¶ 39.

*Krankel* hearing. The court's decision to instead deny defendant's request was, in light of the record before us, manifest error.

¶ 66                                    CONCLUSION

¶ 67        Accordingly, for all the foregoing reasons, we reverse the judgment of the trial court with respect to its denial at the preliminary *Krankel* inquiry we ordered on initial remand of defendant's claim of ineffective assistance of defense counsel. This matter is hereby remanded for the appointment of *Krankel* counsel to represent defendant on the merits of this posttrial claim regarding defense counsel's failure to secure Johnson's testimony and to take whatever action appointed counsel deems appropriate in light of that claim, and for a full *Krankel* hearing to be conducted by the trial court on that claim. At this time, we take no position on the merits of such claim but, instead, again retain jurisdiction over this cause.

¶ 68        Reversed and remanded with directions; jurisdiction retained.