NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241372-U

NO. 4-24-1372

IN THE APPELLATE COURT

FILED
October 27, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| ERIC R.T. JACKSON, | ) | No. 21CF475 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John P. Vespa and |
| | ) | Paul P. Gillfillan, |
| | ) | Judges Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Lannerd and Grischow concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court remanded for the trial court to conduct a proper inquiry into defendant's *pro se* posttrial claim of ineffective assistance of counsel.

¶ 2    Following a jury trial, defendant, Eric R.T. Jackson, was found guilty of one count of first degree murder (720 ILCS 5/9-1(a)(2) (West 2020)) and two counts of aggravated battery (*id.* § 12-3.05(e)(1)) and sentenced to an aggregate term of 90 years in prison. Defendant appeals, arguing (1) his trial counsel provided ineffective assistance by failing to object to the foundation for a firearms identification and comparison opinion and by failing to conduct an adequate cross-examination of the expert rendering said opinion, (2) his trial counsel provided ineffective assistance by failing to object to the foundation for information obtained from a cell phone, (3) his trial and postsentencing counsel provided ineffective assistance by failing to properly raise and

present a claim that his sentence is excessive and in violation of the Illinois proportionate penalties clause (Ill. Const. 1970, art. I, § 11) and unconstitutional as applied, and (4) the trial court erred in failing to appoint him counsel following its preliminary inquiry into his *pro se* posttrial claim of ineffective assistance of trial counsel because there was possible neglect of the case based upon counsel's failure to present an alibi defense. For the reasons that follow, we conclude the court failed to conduct an adequate inquiry into defendant's *pro se* posttrial claim of ineffective assistance of counsel pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984), and its progeny and, therefore, we remand for the court to conduct a proper *Krankel* inquiry and decline to address defendant's other arguments at this time.

¶ 3                                    I. BACKGROUND

¶ 4         The following background is limited to the facts necessary to understand the dispositive *Krankel* issue involved in this appeal.

¶ 5                              A. Pretrial Proceedings

¶ 6         In August 2021, a grand jury returned an indictment charging defendant with one count of first degree murder (720 ILCS 5/9-1(a)(2) (West 2020)), two counts of aggravated battery (*id.* § 12-3.05(e)(1)), and aggravated unlawful use of a weapon (*id.* § 24-1.6(a)(2)) . The charges stemmed from a shooting that occurred in Peoria on July 4, 2021, at around 11 p.m. Three individuals were shot, one of whom died. Private counsel entered an appearance on defendant's behalf in April 2022 and then continued to represent defendant through the sentencing hearing.

¶ 7                                    B. Jury Trial

¶ 8         In January 2024, the trial court, the honorable John P. Vespa presiding, conducted a three-day jury trial. On the first day of the trial, trial counsel stated, when addressing the scheduling of witnesses, he informed the two defense witnesses, Makenna McNutt and Gage

Williams, which day they were expected to testify. The State, in response, indicated Williams had not been disclosed in discovery and requested information about him, as well as a summary of his anticipated testimony, which trial counsel indicated he would provide that day.

¶ 9    On the morning of the second day of the trial, the State addressed trial counsel's plan to call McNutt and Williams as witnesses. The State initially noted it had not received any information about Williams from trial counsel. The State asserted its review demonstrated neither Williams nor McNutt was properly disclosed in discovery, and, therefore, it moved for their testimony to be barred as a discovery violation. Trial counsel, in response, acknowledged the State was entitled to notice of the witnesses and their expected testimony and maintained he would provide the State with that information. While the trial court emphasized the late disclosure would justify granting the State's motion, it encouraged the parties to reach "a middle ground." After a recess, the State informed the court that trial counsel had indicated Williams and McNutt were "alibi witnesses." The State asserted trial counsel had not properly disclosed an alibi defense. The State further noted trial counsel had committed a similar discovery violation a month earlier in an unrelated trial and the judge in that case had barred counsel from presenting alibi witnesses. Trial counsel, in response, stated:

"Judge, *** I thought I had provided the alibi defense. Obviously, [the State] says I never gave it to her and I don't doubt it. I know it's late and I know I should have done it at an earlier time. However, it's a fairly simple thing that they'll be testifying to. And if it's barred, Judge, there's no doubt in my mind at the conclusion of this case if there is a guilty finding, that the issue of ineffective assistance of counsel would be raised and rightfully so. So I'm only asking if you would allow me to correct that mistake that I made. I'm not making excuse—I guess

maybe I am.

Judge, I travelled from Chicago down here and back. I tried to do everything properly as I'm supposed to. And in this instance I messed up. And as I say, if you don't allow me to file that alibi defense now, there's no question in my mind that ineffective assistance of counsel would be raised and it would be a valid point.

Mea culpa, it's my fault. I readily admit that. I think it would be very detrimental to the defendant. I apologize to [the State]. I apologize to the Court. There's nothing more that I can do and it's a very simple alibi defense. I've already told [the State] what it is. And there's really nothing more I can say."

After further, unrecorded discussions in chambers, the court directed trial counsel to make the witnesses available to the State by noon so the State's investigators could interview them or risk their testimony being barred as a discovery violation.

¶ 10 Later that morning, Williams and McNutt arrived at the courthouse. An issue arose where a trial spectator told McNutt about witness testimony from earlier that morning. When addressing the issue, trial counsel asserted any prior testimony was unrelated to McNutt's anticipated testimony. After the State indicated it was still unaware of McNutt's anticipated testimony, trial counsel stated:

"I told you she was working at Famous Dave's. Gage and [defendant] came there. They had a late lunch there. They then left to watch fireworks. And then he brought [defendant] to Makenna's home about 10:00 or 10:15 and that's it. That's it. Nothing to do with any of these witnesses that testified."

The trial court ultimately excluded the spectator from the trial and directed trial counsel to admonish McNutt to speak with only the State's investigators.

¶ 11        At the conclusion of the second day of the trial, the State informed the trial court that its investigators interviewed McNutt and Williams, it had been briefed by the investigators on the conversations, and a report of the conversations was being prepared by the investigators. The State asserted:

> "Obviously I don't want to stop this trial now because of the Defense's failure to provide proper discovery. So we will withdraw our objection to their testimony as long as it's limited to what they disclosed and they can testify tomorrow."

Trial counsel, in response, indicated he told the two witnesses he did not know if they would be allowed to testify, but he wanted them to be present at the courthouse the next morning. Trial counsel also indicated, on inquiry of the court, he had not been briefed on the conversations between the witnesses and the State's investigators. The State asserted it would give trial counsel a copy of the report.

¶ 12        On the third day of the trial, the State presented its final witness and then rested its case. After denying a motion for a directed verdict from the defense, the trial court inquired of trial counsel, "Are you going to be putting on two more people—or two people?" Trial counsel indicated he needed to speak with defendant. After a recess, trial counsel indicated the defense would rest without presenting any evidence. The court confirmed with defendant that it was his decision not to testify.

¶ 13        In closing, trial counsel argued the State had not proven defendant was the individual who committed the charged offenses. The jury found defendant guilty of the charged offenses. The jury also found the State had proven defendant was armed with a firearm during the commission of the first degree murder.

¶ 14                        C. Posttrial Proceedings

¶ 15   In May 2024, the trial court denied defendant's motion for a new trial and then sentenced him to a term of 65 years in prison for first degree murder and two terms of 25 years in prison for aggravated battery. The court ordered the 65-year term to run consecutively to one of the 25-year terms, for an aggregate term of imprisonment totaling 90 years. Following sentencing, a notice of appeal was filed on defendant's behalf.

¶ 16   In August 2024, the trial court, the honorable Paul Gilfillan presiding, conducted a status hearing. Judge Gilfillan presided over the matter due to the retirement of Judge Vespa. Because it was discovered defendant had filed a timely *pro se* motion to reconsider the sentence, the court struck the notice of appeal as premature and appointed postsentencing counsel to represent defendant on his motion.

¶ 17   In October 2024, the trial court, Judge Gilfillan presiding, conducted a hearing on defendant's motion to reconsider the sentence, which defendant's postsentencing counsel adopted. Following arguments, the court denied defendant's motion. In doing so, the court noted, "As far as the sentencing judge's hearing, I read it too. Like [postsentencing counsel], I didn't read the entirety of the trial, but I'm familiar enough with the electronic docket to know about the case."

¶ 18   After the trial court denied defendant's motion to reconsider the sentence, postsentencing counsel informed the court about a posttrial *pro se* claim of ineffective assistance of trial counsel. The court allowed defendant the opportunity to explain his claim. In part, defendant asserted, "I had two alibi witnesses that was supposed to come to the stand and testify on my behalf and neither one of them was presented in trial at all." Defendant noted the State "almost didn't even allow them to testify at all." Defendant also noted:

> "Even with this my people had tried to get in contact with [trial counsel] to come hear this motion and stuff. He pretty much told us since the trial over,

everything else over, he can't help me. Don't call his phone no more. That's pretty much what he told me."

¶ 19    The trial court, after allowing defendant to explain his claim of ineffective assistance, asked for "[c]ounsel's thoughts about proceeding next on that new[ly] introduced issue to the case." Postsentencing counsel asserted he did not believe it was appropriate for the State to weigh in on the issue. He also indicated, as it related to the alibi defense, he had confirmed the following with the State: (1) trial counsel did not disclose the witnesses prior to trial, (2) the State interviewed the witnesses during a trial recess, and (3) the State ultimately did not object to the witnesses being called despite not being properly disclosed. Postsentencing counsel also stated:

"However, it appears that [trial counsel] had decided on his own not to present the alibi defense. The testimony was available. The witnesses were there. It does appear that [trial counsel] decided not to present that defense."

¶ 20    After hearing from postsentencing counsel, the trial court acknowledged the State should not weigh in on the issue and indicated it was "talking about [the] procedure for going forward." The court stated it would proceed with a "preliminary *Krankel* hearing." The court then inquired of defendant with respect to his claim. As for trial counsel not presenting an alibi defense, defendant confirmed he told trial counsel about the alibi witnesses and those witnesses were present at trial. Defendant also confirmed he did not raise an objection at trial on the basis his trial counsel was being ineffective for not calling the witnesses. Defendant explained he did not do so because he "didn't know that's what I was supposed to [do]."

¶ 21    The trial court, after inquiring of defendant, found as follows as it relates to trial counsel not presenting an alibi defense:

"Based on what I heard today, the substantive issues as to trial, calling of

witness[es] or lack thereof, and I find that to be trial strategy on behalf of [trial counsel] who could very well have concluded based on this record that proceeding in an alibi situation would be counterproductive to his client's case."

¶ 22    After making its finding, the trial court, while noting it was not asking the State to weigh in on the issue, asked the State about the circumstances of the alibi defense. The State asserted (1) an alibi defense was not tendered prior to trial, (2) the defense witnesses were present at trial and interviewed by its investigators, (3) it provided trial counsel with a report of the interviews between its investigators and the witnesses, and (4) it withdrew its objection to the presentation of an alibi defense.

¶ 23    The trial court, after hearing from the State, concluded with the following:

"Okay. Very good. That supports my decision that the State withdrawing its objection on the record back then at trial probably ended up concluding that it was supportive of the State's case and/or not helpful to the Defense case.

So, all that considered, the preliminary *Krankel* hearing conducted, motion to appoint, the next logical step in the case, the new attorney to explore all of that further is denied."

¶ 24    This appeal followed.

¶ 25                                    II. ANALYSIS

¶ 26    On appeal, defendant argues, amongst other things, the trial court erred in failing to appoint him counsel following its preliminary inquiry into his *pro se* posttrial claim of ineffective assistance of trial counsel because there was possible neglect of the case based upon counsel's failure to present an alibi defense. Specifically, defendant asserts (1) the court's finding that the failure to call the alibi witnesses was a matter of trial strategy lacked any basis supported

by the record and (2) possible neglect was demonstrated because the offenses for which he was convicted "took place during a period where the alibi witnesses place him at [McNutt's] home."

¶ 27     The State, in response, argues the trial court's handling of defendant's *pro se* posttrial claim of ineffective assistance of trial counsel was sufficient. Specifically, it asserts the court conducted an adequate inquiry into defendant's claim and did not err by rejecting it.

¶ 28     Pursuant to *Krankel*, 102 Ill. 2d at 189, and its progeny, when a trial court is presented with a *pro se* posttrial claim of ineffective assistance of counsel, the court must conduct an inquiry into the factual basis of the defendant's claim to determine whether new counsel should be appointed to assist the defendant with the claim. See *People v. Johnson*, 159 Ill. 2d 97, 126 (1994); *People v. Moore*, 207 Ill. 2d 68, 77-78 (2003); *People v. Banks*, 237 Ill. 2d 154, 213 (2010). This inquiry is often referred to as a "preliminary *Krankel* inquiry." *In re Johnathan T.*, 2022 IL 127222, ¶ 21. The goal of a *Krankel* proceeding is to "facilitate the trial court's full consideration of a defendant's *pro se* claim," thus creating a record and potentially limiting issues raised on appeal. *People v. Ayres*, 2017 IL 120071, ¶ 13.

¶ 29     In conducting a *Krankel* inquiry, the trial court may (1) discuss the claim with the defendant, (2) ask trial counsel to "answer questions and explain the facts and circumstances" relating to the claim, and (3) evaluate the claim based on its knowledge of trial counsel's performance at trial and "the insufficiency of the defendant's allegations on their face." *Moore*, 207 Ill. 2d at 78-79. As our supreme court has repeatedly stated, " 'some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim.' " *Ayres*, 2017 IL 120071, ¶ 12 (quoting *People v. Jolly*, 2014 IL 117142, ¶ 30); see *People v. Jackson*, 2020 IL 124112, ¶ 110 (repeating the same and

describing it as an "established" principle).

¶ 30　　　　Where the *Krankel* inquiry discloses "possible neglect of the case," the trial court should appoint new counsel to independently investigate and represent the defendant at a separate hearing. *Moore*, 207 Ill. 2d at 78. If, on the other hand, the claim "lacks merit or pertains only to matters of trial strategy," the court may deny the claim without appointing new counsel. *Id.*

¶ 31　　　　"The issue of whether the trial court properly conducted a preliminary *Krankel* inquiry presents a legal question that we review *de novo*." *People v. Roddis*, 2020 IL 124352, ¶ 33. "[I]f the trial court has properly conducted a *Krankel* inquiry and has reached a determination on the merits of the defendant's *Krankel* motion, we will reverse only if the trial court's action was manifestly erroneous." *Jackson*, 2020 IL 124112, ¶ 98.

¶ 32　　　　In this case, a review of defendant's argument demonstrates he is challenging not only the trial court's ultimate ruling following its preliminary *Krankel* inquiry but also the adequacy of the court's inquiry. Indeed, the State, in response, maintains the court conducted an adequate inquiry into defendant's claim. Our review, therefore, begins with considering the adequacy of the inquiry conducted by the court.

¶ 33　　　　Following the hearing on the motion to reconsider the sentence, postsentencing counsel, who was appointed solely to pursue defendant's *pro se* motion to reconsider the sentence, informed the trial court that defendant had a posttrial *pro se* claim of ineffective assistance of trial counsel. The court allowed defendant the opportunity to explain his claim. Defendant asserted his claim was based, in part, upon trial counsel's failure to present testimony from his two alibi witnesses. After defendant's explanation, the court solicited input on how it should proceed with the issue, which resulted in postsentencing counsel asserting the State should not weigh in on the issue and highlighting purported facts related to plaintiff's claim, which counsel had confirmed

- 10 -

with the State. That is, postsentencing counsel seems to have believed the court was conducting a preliminary *Krankel* inquiry and the court would benefit from being made aware of certain facts related to plaintiff's claim. As for counsel's latter belief, it likely stemmed from the fact the judge presiding over the matter did not preside over the trial and the judge had admitted he had not "read the entirety of the trial [transcripts]." After hearing from postsentencing counsel, the trial court confirmed the State should not weigh in on the issue and noted it was "talking about [the] procedure for going forward." The court, at that point, indicated it would proceed with its "preliminary *Krankel* hearing."

¶ 34        The trial court examined defendant about his *pro se* claim of ineffective assistance of trial counsel. As for trial counsel not presenting an alibi defense, defendant confirmed he told trial counsel about the alibi witnesses and those witnesses were present at trial. Defendant also confirmed he did not raise an objection at trial on the basis his trial counsel was being ineffective for not calling the witnesses. Defendant explained he did not do so because he "didn't know that's what I was supposed to [do]." Following this examination, the court rejected defendant's claim of ineffective assistance, finding, in part, the decision not to call the alibi witnesses was "trial strategy" by trial counsel, "who could very well have concluded based on this record that proceeding in an alibi situation would be counterproductive to his client's case."

¶ 35        After making its finding, the trial court, while noting it was not asking the State to weigh in on the issue, asked about the circumstances of the alibi defense. The court found the additional circumstances provided by the State supported its decision, noting "the State withdrawing its objection on the record back then at trial probably ended up concluding that it was supportive of the State's case and/or not helpful to the Defense case."

¶ 36        We find the preliminary *Krankel* inquiry conducted by the trial court was

inadequate. After learning defendant's claim of ineffective assistance was based, in part, upon his trial counsel's failure to present testimony from his two alibi witnesses, the court solely conducted an examination of defendant. The court confirmed defendant told trial counsel about the alibi witnesses, those witnesses were present at trial, and defendant did not raise an earlier claim of ineffective assistance based on trial counsel's failure to call the witnesses. The information discovered from the examination of defendant, and any knowledge about the facts of the case gleaned from the record and proffers of postsentencing counsel and the State, were insufficient to facilitate a full consideration of defendant's *pro se* claim of ineffective assistance of trial counsel.

¶ 37           The State argues, with limited analysis, the trial court "did not err in rejecting defendant's claim without further inquiry on the simple basis that defendant's claim[ ] went to matters of strategy." To the extent the State is suggesting a court need not inquire into matters which ordinarily relate to trial strategy, we reject that suggestion. To begin, a matter which ordinarily is decided as a matter of trial strategy may, in fact, be the product of inadvertent oversight rather than intentional decision-making. Furthermore, even if there is an intentional decision, a defendant may overcome the strong presumption that the decision was made as a matter of sound trial strategy. See *People v. Maya*, 2019 IL App (3d) 180275, ¶ 27 ("Given that a defendant may, at least potentially, overcome the strong presumption of sound trial strategy, a circuit court should not dismiss a claim of ineffectiveness on the bare fact that it may relate to trial strategy."). Therefore, the fact a *pro se* claim of ineffective assistance is based upon a matter which ordinarily relates to trial strategy does not permit a court to reject that claim without further inquiry.

¶ 38           The State also argues "the record before the [trial] court was sufficient to allow it to make the determination that the decision not to present the alibi witnesses was one of strategy." The State emphasizes the court was informed (1) the alibi witnesses were at trial, (2) the State

withdrew its objection to allowing the testimony of the witnesses after it interviewed them, and (3) defendant did not raise an issue with counsel's failure to present the witnesses earlier. These facts, however, do not demonstrate the absence of an alibi defense was the product of an intentional decision rather than an inadvertent oversight. The court did not ask defendant about potential conversations he had with counsel about a decision not to present the alibi witnesses, nor did it make any inquiry of trial counsel about the claim. See *People v. Peterson*, 2017 IL 120331, ¶ 80 ("[T]he decision whether to call a certain witness for the defense is a matter of trial strategy, left to the discretion of counsel after consultation with the defendant."). Additionally, while the court, and now the State on appeal, offer plausible grounds upon which trial counsel *may* have decided not to present the alibi defense, the record itself does not show the grounds for any decision not to present the alibi witnesses. As the record stands, it is unclear whether the absence of an alibi defense at trial was, in fact, a product of trial strategy.

¶ 39    The State does not argue, nor do we find, the trial court's judgment may be affirmed based upon an absence of prejudice from the failure to present an alibi defense. The alibi defense was premised on the testimony of McNutt and Williams. While trial counsel provided a summary of McNutt's anticipated testimony on the second day of trial, that summary occurred prior to McNutt's interview with the State's investigator. The report from that interview is not contained in the record, and the State conditioned its withdrawal of its objection to McNutt's testimony to McNutt testifying consistent with her disclosure. Furthermore, the record does not contain any summary of the anticipated testimony from Williams. In this case, without a summary of the expected testimony from the alibi witnesses, we cannot find an absence of prejudice from the failure to present an alibi defense.

¶ 40    The failure to adequately question defendant or his trial counsel concerning the

absence of an alibi defense not only resulted in a record inadequate to consider defendant's claim on the merits but also a record inadequate to find possible neglect of the case. Therefore, defendant's requested relief—that we remand for the appointment of counsel to pursue his *pro se* claim of ineffective assistance of trial counsel—is premature. Instead, we remand for the trial court to conduct a proper inquiry into defendant's *pro se* posttrial claim of ineffective assistance of counsel.

¶ 41 The result in this case could have been easily avoided. After hearing that defendant's *pro se* claim of ineffective assistance was based, in part, upon trial counsel's failure to present testimony from two alibi witnesses, the trial court appropriately solicited input on how it should proceed with the issue. At that point, either postsentencing counsel or the State should have suggested continuing the matter to allow trial counsel to be present for a preliminary *Krankel* hearing. Even without such a suggestion, the better practice for the court was to *sua sponte* continue the proceeding on said grounds. Again, as our supreme court has repeatedly stated, " 'some interchange between the trial court and trial counsel regarding the facts and circumstances surrounding the allegedly ineffective representation is permissible and usually necessary in assessing what further action, if any, is warranted on a defendant's claim.' " *Ayres*, 2017 IL 120071, ¶ 12 (quoting *Jolly*, 2014 IL 117142, ¶ 30).

¶ 42 Because a new preliminary *Krankel* inquiry is required, we need not consider defendant's other arguments presented in this appeal at this time. See *People v. Bell*, 2018 IL App (4th) 151016, ¶ 37 ("Depending on the result of the preliminary *Krankel* inquiry, defendant's other claims may become moot."). While we are "remanding for further proceedings on defendant's *pro se* claim of ineffective assistance of counsel," we retain jurisdiction over defendant's other claims. *People v. Wilson*, 2019 IL App (4th) 180214, ¶ 26. If "defendant is not satisfied with the

outcome of the proceedings on remand, he may again appeal and raise any supplementary claims relating to the remand proceedings, and the State may have an opportunity to respond to those claims." *Id.*

¶ 43                                    III. CONCLUSION

¶ 44          For the reasons stated, we remand for the trial court to conduct a proper inquiry into defendant's *pro se* posttrial claim of ineffective assistance of counsel.

¶ 45          Remanded with directions.